Stephen V. O'Neal (State Bar No. 95804)
soneal@jonesday.com
Kent W. Lindsay (State Bar No. 120833)
klindsay@jonesday.com
David L. Wallach (State Bar No. 233432)
dwallach@JonesDay.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendants
CHEVRON CORPORATION,
CHEVRON U.S.A. HOLDINGS, INC.,
CHEVRON U.S.A. INC.,
CHEVRON INVESTMENTS, INC.,
CHEVRON OVERSEAS CO., and
CHEVRON AUSTRALIA PETROLEUM CO.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CPB CONTRACTORS PTY LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>CHEVRON CORPORATION, et al. ,<br><br>    Defendants. | **Case No. 16-cv-05344-JCS**<br><br>**DEFENDANTS' MOTION TO STAY AND TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>Complaint Filed: August 19, 2016<br><br>Date:    November 4, 2016<br>Time:    9:30 a.m. |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................ 1

RELIEF SOUGHT ................................................................................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 3

    A.    The Jetty Contract and Its Arbitration Agreement .................................... 3

    B.    The "Jetty Charter." ................................................................................... 4

    C.    The Deed of Settlement ............................................................................. 6

    D.    CPB Issues a Notice of Dispute ................................................................ 6

    E.    Plaintiff's Claims In Its Complaint Are Wholly Duplicative of the Notice of Dispute ................................................................................ 8

    F.    The Substantially Identical Complaint Against KBR ........................... 9

    G.    The UNCITRAL Arbitration ..................................................................... 9

III.  THIS ACTION SHOULD BE STAYED ................................................................... 10

    A.    Plaintiff's Claims Are Based on Issues Referable to Arbitration ...................... 10

    B.    The Chevron U.S. Defendants Are Entitled to Enforce the Arbitration Agreement ......................................................................... 12

IV.  IF THE ACTION IS NOT STAYED, IT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) .................................................................................. 16

    A.    The Claims Are Deficiently Pled ........................................................... 16

    B.    Plaintiff's Claims, As Pled, Are Not Plausible ..................................... 18

    C.    The Jetty Charter Is Not a Contract........................................................ 21

V.    CONCLUSION .......................................................................................................... 23

CASES

*Apple Iphone Antitrust Litigation*,
    874 F. Supp. 2d 889, 898 (ND Cal 2012) ...............................................................13

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)...........................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................18

*AT&T Mobility LLC v. Conception*,
    563 U.S. 333 (2011) ...................................................................................................11

*Balen v. Holland Am. Line Inc.*,
    583 F.3d 647 (9th Cir. 2009) ....................................................................................11

*Belize Social Dev. Ltd. v. Gov't of Belize*,
    794 F.3d 99 (D.C. Cir. 2015) ...................................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................18, 19

*Bitstamp Ltd. v. Ripple Labs Inc.*,
    2015 WL 4692418 (N.D. Cal. Aug. 6, 2015)...........................................................14

*Blantz v. Cal. Dept. of Corrections and Rehab.*,
    727 F.3d 917 (9th Cir. 2013).....................................................................................18

*Boucher v. Alliance Title Company, Inc.*,
    127 Cal. App. 4th 262 (2005) ..............................................................................13, 15

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) .............................................................................21, 22

*Chen v. Allstate Ins. Co.*,
    819 F.3d 1136 (9th Cir. 2016)...................................................................................12

*Consumer Financial Protection Bureau v. Nationwide Biweekly Administration,
    Inc.*,
    2016 WL 2961868 (N.D. Cal. May 23, 2016) .........................................................19

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
    418 F. Supp. 2d 193 (E.D.N.Y. 2006) ......................................................................17

*Delphix Corp. v. Actifo, Inc.*,
    2014 WL 4628490 (N.D. Cal. March 19, 2014) .......................................................19

*Goldman v. KPMG LLP*,
    173 Cal. App. 4th 209 (2009) ..............................................................................13, 14

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
    561 U.S. 287 (2010) ............................................................................2

*Grigson v. Creative Artists Agency,*
    210 F.3d 524 (5th Cir. 2000) ..........................................................15

*Heller v. Adobe Systems, Inc.,*
    2016 WL 2996938 (N.D. Cal. May 25, 2016) ..................................22

*Hill v. GE Power Systems, Inc.,*
    282 F.3d 343 (5th Cir. 2002) .................................................. passim

*In re CNET Networks, Inc.,*
    483 F. Supp. 2d 947 (N.D. Cal. 2007) .........................................4, 21

*In re Toyota Motor Corp.,*
    785 F. Supp. 2d 883 (C.D. Cal. 2012) ............................................17

*Kramer v. Toyota Motor Corp.,*
    705 F.3d 1122 (9th Cir. 2013) ........................................................13

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship,*
    109 Cal.App. 4th 1705 (2003) ..........................................14, 15, 16

*MGIC Indem. Corp. v. Weisman,*
    803 F.2d 500 (9th Cir. 1986) ..........................................................20

*Mulato v. Wells Fargo Bank, N.A.,*
    76 F. Supp. 3d 929, 950 (N.D. Cal. 2014) ......................................22

*Murphy v. DirecTV, Inc.,*
    724 F.3d 1218 (9th Cir. 2014) ...................................................13, 14

*Netbula, LLC v. BindView Dev. Corp.,*
    516 F. Supp. 2d 1137 (N.D. Cal. 2007) ..........................................22

*Ogala v. Chevron,*
    2014 WL 2089901 (N.D. Cal. May 19, 2014) ................................17

*Oracle America, Inc. v. Myriad Group A.D.,*
    724 F.3d 1069 (9th Cir. 2013) ..........................................................5

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir.1998) ............................................................21

*Patel v. Liebermensch,*
    45 Cal. 4th 344 (2008) ....................................................................22

*Terry v. Conlon,*
    131 Cal. App. 4th 1445 (2005) ........................................................22

*Ulbrich v. Overstock.com, Inc.,*
    887 F. Supp. 2d 924 (N.D. Cal. 2012) ............................................11

*Xinhua Holdings Ltd. v. Electronic Recyclers Int'l., Inc.*,
   2013 WL 6844270 (E.D. Cal. Dec. 26, 2013) .................................................................3

STATUTES

9 U.S.C. § 3 ............................................................................................................... passim

9 U.S.C. § 201 .......................................................................................................................11

9 U.S.C. § 202 .......................................................................................................................11

9 U.S.C. § 208 .......................................................................................................................11

OTHER AUTHORITIES

Fed. R. Civ. P. 11 ..................................................................................................................19

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 18, 22, 23

PLEASE TAKE NOTICE that at 9:30 a.m. on November 4, 2016, before the Honorable Joseph C. Spero, in Courtroom G, 450 Golden Gate Avenue, San Francisco, California, Defendants Chevron Corporation, Chevron U.S.A. Holdings, Inc., Chevron U.S.A. Inc., Chevron Investments, Inc., Chevron Overseas Company, and Chevron Australia Petroleum Company will move this Court for an order staying this litigation and compelling arbitration or, in the alternative, dismissing the Complaint with prejudice.

## RELIEF SOUGHT

An order staying this litigation pursuant to 9 U.S.C. § 3 and compelling Plaintiff to arbitrate its claims in accordance with its contract as a condition of having the stay lifted; or, in the alternative, an order dismissing the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has not stated a claim on which relief may be granted and cannot do so.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION.

Section 3 of the Federal Arbitration Act ("FAA") requires courts to stay litigation "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Here, Plaintiff CPB Contractors Pty Limited ("CPB") as part of a consortium of contractors called Saipem Leighton Consortium ("SLC"), entered into a contract with non-party Chevron Australia Pty Ltd. ("Chevron Australia") and its joint venture partners for the construction of a jetty (the "Jetty Contract") in Australia. The Jetty Contract requires "[a]ny Dispute" arising from the contract "or the performance of the Work" under the contract to be "exclusively and finally settled" in binding arbitration.

In a transparent effort to circumvent the Jetty Contract's arbitration agreement, Plaintiff has sued parent and affiliate companies of Chevron Australia, alleging on "information and belief" that Defendants Chevron Corporation, Chevron U.S.A. Holdings, Inc., Chevron U.S.A. Inc., Chevron Investments, Inc., Chevron Overseas Company, and Chevron Australia Petroleum Company (collectively the "Defendants" or "Chevron U.S. Defendants") "instructed" or

"directed" Chevron Australia to breach the Jetty Contract. Apart from their lack of merit, the claims in CPB's Complaint unquestionably arise out of the Jetty Contract and the work performed under the Jetty Contract, and unequivocally involve "issue[s] referable to arbitration."

Courts have consistently rejected attempts such as Plaintiff's to undermine an arbitration agreement by suing non-signatories on claims of tortious interference or other collateral theories of liability. "A suit against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will always contain 'issue[s] referable to arbitration under an agreement in writing.'" *Hill v. GE Power Systems, Inc.*, 282 F.3d 343, 347 (5th Cir. 2002) (quoting 9 U.S.C. § 3; brackets in original). "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotation marks omitted).

CPB initiated dispute resolution proceedings against Chevron Australia under the Jetty Contract by issuing a 418 page Notice of Dispute detailing all the Change Order Requests ("CORs") that it contends were wrongfully rejected. Following failed attempts to resolve the matter, Chevron Australia initiated arbitration against CPB and its consortium partners to resolve these and other issues. The CORs at issue in the Australian arbitration are the same ones at issue in this litigation. Plaintiff's claims against Defendants are thus "based on the same operative facts and [are] inherently inseparable" from its claims against Chevron Australia. CPB is clearly seeking to reap the benefit of its contract with Chevron Australia while attempting to avoid the contract's arbitration provision by bringing its claims against Chevron Australia's affiliates. Accordingly, pursuant to Section 3 of the FAA, this litigation must be stayed pending completion of the Australian arbitration.

In the alternative, if the Court determines that an immediate stay is not warranted, Plaintiff's Complaint should be dismissed because it falls well short of federal pleading requirements. The Complaint does not contain factual allegations sufficient to state a plausible claim against any of the six Defendants. The substantive allegations of the Complaint are devoted mostly to alleged conduct of Chevron Australia. With respect to the six Defendants, the Complaint contains only conclusory allegations made on information and belief without any

factual content supporting them. Underscoring the vacuousness and implausibility of these allegations is the fact that Plaintiff made substantially identical assertions regarding an entirely different set of defendants in another case filed the same day in Texas. For these reasons, if this litigation is not immediately stayed pending completion of the Australian arbitration, then the Complaint should be dismissed with prejudice.

## II.     BACKGROUND.

### A.     The Jetty Contract and Its Arbitration Agreement.

CPB, as part of a consortium of contractors, was awarded a contract (the "Jetty Contract" or "Contract") to build a 1.3 mile long jetty (the "Jetty project") as part of a liquefied natural gas project on Barrow Island off the coast of Western Australia. Compl. ¶¶ 22, 32. This project is owned by a joint venture consisting of Chevron Australia, Mobil Australia Resources and others (collectively the "Chevron Australia JV"). *Id*. ¶ 28. The Contract Price for construction of the jetty was AU $844.5 million. Compl. ¶ 33.

Chevron Australia JV retained a joint venture consisting of four companies, one of which was KBR E&C Australia Pty Limited, as an agent to perform construction management functions on the Jetty project. *Id*. ¶ 31. The Complaint refers to Chevron Australia JV's construction manager as "Kellogg Joint Venture" or "KJV." *Id.* KJV was a party to the Contract in its capacity as Chevron Australia JV's agent. Compl. ¶32. None of the Chevron U.S. Defendants is a party to the Contract.

The Jetty Contract contains a mandatory dispute resolution provision that requires that disputes be referred to direct negotiations between the parties, followed by an optional reference to a dispute board if the parties agree, followed by binding arbitration. With regard to arbitration, Article 21.2 of the General Terms and Conditions of the Jetty Contract states that "Any Dispute" that cannot be resolved through negotiations must be "exclusively and finally settled" through binding arbitration in Perth, Western Australia, under the UNCITRAL Rules." Mattys Decl., Ex. A.[1] "Dispute" is defined broadly as "any dispute or controversy arising out of this Agreement or

---

[1] "For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside the pleadings." *Xinhua Holdings Ltd. v. Electronic Recyclers Int'l., Inc.*, 2013 WL 6844270, *5 (E.D. Cal. Dec. 26, 2013). Moreover, the Jetty Contract and other documents attached to the Mattys Declaration are referred to and discussed in the Complaint, and

the performance of the Work, including a Claim and any dispute or controversy regarding the existence, construction, validity, interpretation, enforceability or breach of this Agreement." *Id.,* Art. 1.26. "Claim" is defined as "any claim, liability, loss, demand, damages, Lien, cause of action of any kind, obligation, costs, royalty, fees, assessments, penalties, fines, judgment, interest and award (including recoverable legal counsel fees and costs of litigation of the Person asserting the Claim), whether arising by law, contract, tort, voluntary settlement or otherwise." *Id.*, Art. 1.11. "[T]he Work" is defined as "the design, material supply, fabrication and construction and commissioning of the LNG Jetty in accordance with the Drawings and Specification included in Appendices 1 and 2." *Id.*, Scope of Work, Art. 2.1.

**B.    The "Jetty Charter."**

CPB alleges that during the course of the Work, the Chevron Australia JV and KJV "initiated and facilitated" the development of a document called the "Gorgon Jetty Team Charter" (the "Jetty Charter"). Compl. ¶¶ 68-69. The Jetty Charter is dated May 2, 2012. Mattys Decl., Ex. D. It is a one-page document which states in full:

---

(continued…)

thus are subject to judicial notice. *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 953 (N.D. Cal. 2007).

**SLC / KJVG / Chevron - Gorgon Jetty Team Charter**
**2May, 2012**

The Gorgon Jetty team will create and maintain an open, trusting, honest and cooperative culture to work with integrity as ONE TEAM to "do what we say we will do". Further, we commit to the following behaviours:

The Health and Safety of our collective workforce is our core value.

We will deliver our project to the quality required in a timely manner.

We will support the workforce with robust leadership, timely decision making and detailed planning to safely and efficiently deliver the Gorgon Jetty in a manner that our entire team can be proud of.

We will work in an environment of learning where everyone has a voice and all views are respected.

We will work as ONE TEAM to solve problems and make decisions necessary to establish the best construction results with a win-win perspective while protecting the environment of Barrow Island. Once a decision is reached, we will speak with one voice.

We will demonstrate a CAN-DO approach to deliver the Gorgon Jetty for Chevron.

We commit to assessing our alignment with these values, principles and behaviours regularly, implementing improvement opportunities, and reporting our progress to the sponsors and our team.

*"The Team"*

*Id.*

CPB alleges that the Jetty Charter is a binding contract (*id.* ¶ 408) and "on information and belief" that two "current or former employees" of the Chevron U.S. Defendants signed the document in July 2012 on behalf of the Chevron U.S. Defendants (*id.* ¶ 74), although the Jetty Charter itself makes no mention at all of the Chevron U.S. Defendants.

Regardless of whether the Jetty Charter is a binding contract (it is not) and whether the Chevron U.S. Defendants are parties to it (they are not), the Jetty Charter unambiguously arises out of the Contract and concerns the performance of the Work. Indeed, according to CPB, the Jetty Charter's purpose was to improve the "conduct of the Gorgon Project." Compl. ¶ 67. Thus, under Article 21 of the Jetty Contract any Dispute related to the Jetty Charter must be resolved exclusively in arbitration.[2]

---

[2] If there were any disagreement about whether a dispute related to the Jetty Charter must be resolved in arbitration pursuant to the Jetty Contract, that issue would need to be resolved in the first instance by the arbitrators. *Oracle America, Inc. v. Myriad Group A.D.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("incorporation of the UNCITRAL arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.").

C.      **The Deed of Settlement.**

On June 8, 2012, as the Work under the Contract was underway, the parties to the Jetty Contract executed a contract amendment referred to as the Deed of Settlement or "DOS." Compl. ¶ 76. The DOS resolved "absolutely all possible claims by [SLC] in respect of the Contract" as of the date of the DOS (Mattys Decl., Ex. B, Recital F), and committed SLC to perform its remaining Work under the Contract pursuant to revised requirements and completion dates.

CPB alleges that it executed the DOS based on the "specific assurances and representations" in the Jetty Charter. Compl. ¶ 76. But the DOS supersedes "any prior discussions, undertakings and agreements in respect of the subject matter of this Deed" (*id.*, Art. 24.4(A)), and each party expressly acknowledged that it had "not relied on any oral statements, representation, undertaking, covenant or agreement made before the date of this Deed relating to the matters the subject of this Deed and not contained in this Deed" (*id.* Art. 24.4(B)).

Like the Jetty Contract, the DOS requires "[a]ny Dispute" to be resolved exclusively through arbitration. Mattys Decl., Ex. B, Art. 22.2 ("Any Dispute shall be exclusively and finally settled in accordance with Article 21.2 [of the Jetty Contract], read with appropriate amendments to refer to Disputes under this Deed."). "Dispute" is defined in the DOS to mean "any dispute or controversy in respect of this Deed or the performance of the Work in accordance with this Deed, including a Claim and any dispute or controversy regarding the existence, construction, validity, interpretation, enforceability or breach of this Deed." *Id.*, Art. 1.1.

D.      **CPB Issues a Notice of Dispute.**

Over the course of the work, CPB and its consortium partners sought to increase the amounts to be paid under the Jetty Contract by submitting hundreds of CORs totaling more than AU$ 3 billion. (Mattys Decl. ¶ 7). Chevron Australia JV approved some of the CORs and rejected others, ultimately agreeing to increase the contract price from AU$ 844.5 million to AU$ 1.85 billion. *Id.*

Not satisfied with this result, on February 9, 2016, CPB and its consortium partners served a Notice of Dispute on Chevron Australia JV as part of the contractual dispute resolution process set forth at Article 21.2 of the Jetty Contract. Compl. ¶ 267; Mattys Decl., Ex. C. The Notice of

Dispute is 418 pages long, and includes 164 "schedules" that describe claims against Chevron

Australia JV.  The Notice of Dispute and its Index of Schedules are attached as Exhibit C to the

Mattys Declaration.

The Notice of Dispute lists 162 CORs that CPB claims were wrongfully rejected in whole

or in part.  In total, CPB and its consortium partners seek an additional AU$1,934,953,497,

US$121,293,597, €63,171,234, and RM (Malaysian Ringgit) 5,443,817 through the Notice of

Dispute, for failure to pay the same CORs that are the basis of CPB's claims here.

The specific disputes "noticed" in the Notice of Dispute are identified as follows:

1.   The disputes comprise:

a.   claims made in respect of Change Order Requests
(**CORs**) as further described in **Attachment A** and the
schedules to this Notice of Dispute;

b.   claims for breach of Contract by [KJV] and [Chevron
Australia JV] as further described in **Attachment A** and
the schedules of this Notice of Dispute;

c.   claims for adjustments to the Contract Price, Agreement
Schedule and Time(s) for Completion as further
described in **Attachment A** and the schedules to this
Notice of Dispute;

d.   claims for breach of Contract by [KJV] and [Chevron
Australia JV] for failure to make payment of amounts
due under the Jetty Contract including claims for
damages arising from loss of the use of money that
ought to have been paid by [Chevron Australia JV];

e.   disputes regarding purported deductions made by [KJV]
from amounts due to [SLC] for unfinished Change
Orders, liquidated damages and backcharges; and

f.   disputes between [SLC], [KJV], and [Chevron Australia
JV] as further described in **Attachment A** and the
schedules to this Notice of Dispute**.**

Notice of Dispute at 2.

Thus, through the Notice of Dispute, CPB and its consortium partners seek to recover all

amounts alleged to be owed under the Jetty Contract; to recover damages for Chevron Australia

JV's failure to pay in accordance with the Jetty Contract; and to resolve related disputes about the timing and schedule of the Gorgon Project.   CPB seeks to recover the exact same alleged payment shortfalls in this lawsuit against the Chevron U.S. Defendants.

**E.      Plaintiff's Claims In Its Complaint Are Wholly Duplicative of the Notice of Dispute.**

CPB's claim in this litigation is that "Chevron Australia Pty Limited … and other contracting parties … repeatedly and wrongfully reject[ed] Plaintiff's fully-supported 'Change Order Requests' ["CORs"], or Plaintiff's requests for adjustments to the contract price for additional work specifically requested by the project owner and/or its agent that was not within the original scope of work for the project."  Compl. ¶ 2.

Every COR for which CPB seeks to recover damages in this litigation is identified in the Notice of Dispute as being subject to "direct negotiations" and ultimately arbitration with Chevron Australia JV.  Thus, CPB is disingenuous, at best, in alleging that the Notice of Dispute "does *not* involve any of the legal claims that Plaintiff asserts against the Chevron U.S. Defendants in this Complaint[.]"  Compl. ¶ 268 (emphasis in the original).[3]

The Complaint defines all Defendants together as the "Chevron U.S. Defendants" and refers to them collectively in all substantive allegations.  It does not include any allegations of wrongful conduct by any specific defendant.

The charging allegations against the Chevron U.S. Defendants are wholly conclusory. CPB asserts that the Chevron U.S. Defendants are liable for Chevron Australia's allegedly wrongful rejection of CPB's CORs based on CPB's allegations that, "[o]n information and belief, time and time again, the Chevron U.S. Defendants in bad faith instructed their Australian subsidiary, [Chevron Australia], and other contracting parties to repeatedly and wrongfully reject Plaintiff's fully-supported [CORs]" in breach of the Jetty Contract, or substantially similar

---

[3] The Complaint does reference (without alleging damages) three CORs that are not a part of the Notice of Dispute – CORs 248, 297, and 389.  COR 248 was not included in SLC's final payment application and was never quantified by SLC.  CORs 297 and 389 were initially submitted for AU $26,159 and $403,000, respectively, but the CORs were rejected and SLC did not quantify them in its final payment application and has not pursued them further. (Mattys Decl., ¶ 8).

allegations. For example, CPB alleges that Chevron Australia JV wrongfully rejected "fully-supported CORs on the Gorgon Project" relating to delays caused by cyclone events (CORs 227, 228, 234, 236, 249, 392, 398, 400, 401, and 404), delays caused by quarantines required by environmental regulations (CORs 326, 377, 385), delay caused by a safety "timeout" (COR 334), costs for additional accommodations vessels to be used on the project (COR 287), costs of vessel mobilizations (COR 292), and so on, throughout the whole of the Complaint. *See* Compl. ¶¶ 2, 52, 65, 66, 86, 89, 97, 110, 123, 124, 153, 162, 179, 182, 187, 203, 218, 221, 249, 251, 257, 266, 389-391, 397- 390, 397-401, 422. Each of the CORs referenced in the Complaint was made part of SLC's Notice of Dispute.[4] *See* Notice of Dispute Attachment A.

Virtually every paragraph of the Complaint confirms that this litigation has nothing to do with the Defendants but rather everything to do with the performance of the Jetty Contract by CPB, Chevron Australia and their respective partners. The allegations of misconduct are set out in Section IV.C, IV.D and IV.G-L of the Complaint. Each of those sections consists of a series of allegations that Chevron Australia JV and its project manager improperly rejected CPB's CORs (*see, e.g.,* Compl. ¶¶ 35-51) followed by a paragraph conclusorily alleging on information and belief that the Chevron U.S. Defendants "instructed and directed" the alleged conduct (*e.g., id.* ¶ 52).

**F.    The Substantially Identical Complaint Against KBR.**

As discussed above, Chevron Australia JV retained a consortium that included KBR E&C Australia to act as its agent administering the Jetty project. Like Chevron Australia, KBR E&C Australia has a number of U.S. corporate affiliate companies. On the same day that it filed suit against the Chevron U.S. Defendants, CPB filed a substantially identical complaint in Houston, Texas against eight U.S.-based KBR affiliates for the same alleged torts and breaches of contract based on the same conclusory and meritless allegations as are asserted here. Wallach Decl. Ex. 1.

**G.    The UNCITRAL Arbitration.**

In view of the clear Contract requirement that Disputes be resolved in arbitration, and of

---

[4] Save for the three small value CORs referenced in fn. 3, above, which have not been quantified and apparently are not being pursued by SLC.

CPB's transparent effort to avoid its obligations by filing meritless claims against non-parties in the U.S. courts, Chevron Australia initiated arbitration on September 20, 2016, in accordance with the requirements of the Contract, seeking an affirmative recovery against SLC for its breaches of the Jetty Contract, and a determination of final amounts due, if any, to CPB and its consortium members under the terms of the Jetty Contract. A true and correct copy of the Notice of Arbitration is attached as Exhibit E to the Mattys Declaration.

The Notice of Arbitration seeks the following relief:

**5. Relief Sought**

Chevron Australia seeks:

A. An award to Chevron Australia from Saipem, Saipem Portugal, and CPB in an amount to be proven in excess of AUD 50 million,

B. A declaration from the arbitrators that they have sole and exclusive jurisdiction to determine amounts due under the Gorgon Jetty Contract and/or with respect to the performance of work arising out of the Gorgon Jetty Contract including, without limitation,

(i) amounts due on change order requests ("COR's"),

(ii) amounts due for breach of contract,

(iii) amounts due for adjustments to the Contract Price, Agreement Schedule, and Time(s) for Completion,

(iv) amounts due in connection with the Deed of Settlement and Release,

(v) amounts due in connection with the Gorgon Jetty Team Charter, and

(vi) amounts due from KJV, and

C. Chevron Australia seeks an arbitral determination regarding the amounts, if any, due to Saipem, Saipem Portugal, and CPB under the Gorgon Jetty Contract, the Deed of Settlement and Release, and/or the Gorgon Jetty Team Charter. To the extent Saipem, Saipem Portugal and CPB address this request for relief in any response to this Notice of Arbitration, Chevron Australia expressly reserves its right to amend or supplement pursuant to Article 20 of the Rules.

**III.    THIS ACTION SHOULD BE STAYED.**

**A.    Plaintiff's Claims Are Based on Issues Referable to Arbitration.**

The FAA requires this litigation to be stayed pending resolution of the arbitration that will

determine whether Chevron Australia JV improperly rejected any of CPB's CORs, in whole or in part, and, if so, the resulting damages. The arbitration clause of the Jetty Contract is "[a]n arbitration agreement . . . arising out of a legal relationship . . . which is considered as commercial." 9 U.S.C. § 202; *Belize Social Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 104 (D.C. Cir. 2015) ("In the context of international arbitration, 'commercial' refers to 'matters or relationships, whether contractual or not, that arise out of or in connection with commerce.'") (quoting Restatement (Third) of U.S. Law of Int'l Comm. Arbitration § 1-1 (2012)). Accordingly, it is governed by the FAA and the New York Convention on the Recognition and Enforcement of Arbitral Awards ("New York Convention"). 9 U.S.C. §§ 201, 202, 208.[5]

Section 3 of the FAA requires a Court, on application of one of the parties, to stay any suit brought "upon any issue referable to arbitration under an agreement in writing for such arbitration . . . until such arbitration has been had in accordance with the terms of the agreement." *See* 9 U.S.C. § 3. Accordingly, litigation must be stayed where two requirements are met: (1) there is a valid written agreement to arbitrate; and (2) the litigation involves an issue referable to arbitration. "Because of the strong policy favoring arbitration, doubts are to be resolved in favor of the party moving to compel arbitration." *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 929 (N.D. Cal. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)); *AT&T Mobility LLC v. Conception*, 563 U.S. 333 (2011). "[T]he emphatic federal policy in favor of arbitral dispute resolution . . . applies with special force in the field of international commerce." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (internal quotation marks omitted).

The Section 3 requirements are easily met here. The Jetty Contract is a valid written agreement, as CPB presumes in seeking to hold the Chevron U.S. Defendants liable for allegedly

---

[5] Section 202 contains an exception, which states that an arbitration agreement arising from a commercial relationship is not governed by the New York Convention if it is both "entirely between citizens of the United States" and it does not involve "property located abroad, "envisage[] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states." *See* 9 U.S.C. § 202. This exception does not apply here because the parties to the Jetty Contract are not citizens of the United States, and the Contract involves property abroad, envisages performance and enforcement abroad, and is related to Barrow Island, Australia.

tortiously interfering with it.  Nor can there be any reasonable dispute that this litigation involves issues referable to arbitration.  The Jetty Contract requires "any dispute or controversy arising out of" the Contract "or the performance of the Work," including "any dispute or controversy regarding the existence, construction, validity, interpretation, enforceability or breach" of the Jetty Contract, to be "exclusively and finally settled" in arbitration.  *See* Mattys Decl., Ex. A, Arts. 1.26, 21.2.  "A suit against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will always contain 'issue[s] referable to arbitration under an agreement in writing.'"  *Hill*, 282 F.3d at 347 (quoting 9 U.S.C. § 3).

CPB's claims against the Chevron U.S. Defendants all are predicated on Chevron Australia JV's alleged breaches of the Jetty Contract by rejecting CPB's CORs.  As shown above, every rejected COR for which CPB seeks to recover damages in this litigation is at issue in the ongoing arbitration with Chevron Australia.  If CPB fails in the arbitration to prevail on its claims against Chevron Australia JV for allegedly breaching the Jetty Contract, then its claims against the Chevron U.S. Defendants necessarily fail.  On the other hand, if CPB prevails on any of its claims in the arbitration, the arbitral tribunal will determine the quantum of any compensatory damages and issue an award in that amount.  Thus, regardless of which party prevails, the arbitration will moot this action.  It either will establish that there was not a breach of contract— and therefore no tortious inducement to breach—or it will award CPB full compensation for any breaches that occurred.  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim becomes moot when a plaintiff *actually receives* complete relief on that claim") (emphasis in original).

**B.      The Chevron U.S. Defendants Are Entitled to Enforce the Arbitration Agreement.**

CPB is a signatory to the arbitration agreement.  Compl. ¶ 32.  The Chevron U.S. Defendants are not signatories to the arbitration agreement.  But the Supreme Court has held that "a litigant who is not a party to the relevant arbitration agreement may invoke Section 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement."  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 633 (2009).  "[T]raditional principles of state law allow a contract

to be enforced by or against nonparties to the contract through . . . waiver and estoppel," *Id*. at 631.

Under California law, a non-signatory may enforce an arbitration agreement under the doctrine of equitable estoppel in either of two independent circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2014) (cite and quotes omitted); *Apple IPhone Antitrust Litigation*, 874 F. Supp. 2d 889, 898 (ND Cal 2012). This rule embodies the policy that "a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate[.]" *Boucher v. Alliance Title Company, Inc.*, 127 Cal. App. 4th 262, 272 (2005); *Murphy*, 724 F.3d at 1229; *Goldman v. KPMG LLP,* 173 Cal. App. 4th 209, 220 (2009).

The presence of either of the two circumstances identified by *Murphy* is sufficient to invoke equitable estoppel. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129-1133 (9th Cir. 2013). Here, both circumstances apply. CPB asserts in count one that the Chevron U.S. Defendants tortiously induced Chevron Australia JV to breach the Jetty Contract (Compl. ¶ 396) and, in count two, that they breached the Jetty Charter by doing so (*id*. ¶ 422). CPB's claims thus "rely on the terms of," and are "intertwined with," the Jetty Contract. *Murphy*, 724 F.3d 1218 at 1229.

Similarly, to the extent that the Complaint effectively alleges any misconduct by the Chevron U.S. Defendants (*see infra* at 16-21), that conduct is substantially interdependent with the conduct of Chevron Australia JV under the Jetty Contract. The Complaint alleges only that the Chevron U.S. Defendants "instructed" or "pressured" Chevron Australia JV to reject CPB's CORs (Compl. ¶¶ 396-403), or together with Chevron Australia JV and its agent failed to conform to the Jetty Charter by rejecting CPB's CORs (*id.* ¶ 422). Thus, any misconduct alleged against the Chevron U.S. Defendants is completely dependent on Chevron Australia JV's alleged

1    wrongful rejection of CPB's CORs. *Murphy*, 724 F.3d 1218 at 1229.

2       Courts have recognized that "[c]laims of tortious interference with contract are

3   particularly well suited for imposing equitable estoppel against the signatory" because "but for

4   the contract containing the arbitration clause, there would be no breach and no claim for

5   interference with the contract." *Goldman,*173 Cal.App. 4th at 226 n.10. Thus, "[c]ourts routinely

6   allow non-signatory defendants to compel arbitration of tortious interference claims." *Bitstamp*

7   *Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5 (N.D. Cal. Aug. 6, 2015) (Orrick, J.) (citing

8   *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.,* 186 Cal. App. 4th 696, 716

9   (2010); *Boucher,* 127 Cal.App. 4th at 272; *Metalclad Corp. v. Ventana Envtl. Organizational*

10   *P'ship,* 109 Cal.App. 4th 1705, 1717 (2003)).

11       Numerous courts in California and elsewhere have stayed litigation in circumstances

12   similar to those present here. In *Hill*, 282 F.3d 343, plaintiff contracted with General Electric

13   Power Systems, Inc. (GEPSI) to build two power plants. The agreement had an arbitration

14   clause. After the agreement was terminated, plaintiff sued GEPSI's affiliate, GECC, alleging that

15   it instructed GEPSI to breach its contract with plaintiff. The Fifth Circuit reversed the district

16   court's denial of GECC's motion to stay the litigation against it pending resolution of plaintiff's

17   claims against GEPSI in arbitration. It held that a suit against a non-signatory alleging that it is

18   responsible for a signatory's breaches contains "issues referable to arbitration," and thus that the

19   litigation must be stayed under Section 3 of the FAA. *Id*. at 347. Permitting the tortious

20   interference claim to go forward before the arbitration had decided the underlying question of

21   whether any breaches occurred "would undermine the arbitration proceedings . . . , thereby

22   thwarting the federal policy in favor of arbitration." *Id*.

23       In *Metalclad,* 109 Cal. App. 4th at 1717, Metalclad entered into an agreement to sell its

24   subsidiary, Econsa, to Geologic, a subsidiary of Ventana. The sales agreement between

25   Metalclad and Geologic included a broad arbitration clause. After the contract was executed,

26   Metalclad sued Ventana alleging that it had caused its subsidiary (Geologic) to breach the

27   contract for the acquisition of Econsa. *Id*. at 1717. The Court of Appeal found that Metalclad's

28   claim against Ventana "could not be more 'intimately founded in and intertwined with' the

underlying Geologic contract." *Id*. "Metalclad agreed to arbitration in the underlying written contract but now, in effect, seeks the benefit of that contract in the form of damages from Ventana while avoiding its arbitration provision. Estoppel prevents this." *Id*. at 1717.

*Boucher*, 127 Cal. App. 4th 262 arose out of an employment contract between plaintiff and Financial Title Company ("Financial") that included an arbitration agreement. Financial transferred its operations to an affiliate, Alliance Title Company, Inc. ("Alliance"). Plaintiff sued Alliance for tortious interference with contract and prospective economic relations for allegedly causing Financial to breach its employment contract with plaintiff. The Court granted Alliance's motion to stay and compel arbitration, holding that equitable estoppel applies where "a plaintiff has an arbitration agreement with a subsidiary corporation; the plaintiff sues the parent corporation; and the plaintiff's claims against the parent company are based on the same facts and are inherently inseperable." *Id*. at 269.

*Grigson v. Creative Artists Agency,* 210 F.3d 524, 525 (5th Cir. 2000) concerned the film the "Return of the Texas Chainsaw Massacre." The film's owner had a contract with a distributor that included an arbitration agreement. Although one of the actors (Matthew McConaughey) achieved substantial commercial success in other movies before release of the film, the distributor gave the film only limited distribution. The owner first sued the distributor, but voluntarily dismissed after the distributor moved to compel arbitration. The owner then sued McConaughey and his agent for tortious interference alleging that they induced the distributor to breach the distribution agreement. The Court of Appeals held that "this action is the quintessential situation when the doctrine [of equitable estoppel] should be applied." *Id*. at 531. "[P]roceedings against parties and non-parties to the arbitration agreement are stayed pending the outcome of arbitration, when the action against the non-party is dependent upon interpretation of the underlying contract." *Id*. at 526.

This case is not meaningfully distinguishable from *Hill, Metalclad, Boucher* or *Grigson*. CPB's claims against Defendants are based on the contention that, through their affiliate Chevron Australia, they caused Chevron Australia JV to breach its contract with CPB and its partners. Thus, CPB seeks the benefit of its contract with Chevron Australia JV while attempting to avoid

the contract's arbitration provision by bringing its claims against Defendants. "Estoppel prevents this." *Metalclad*, 109 Cal. App. 4th at 1717. The claims against Defendants are based on the same operative facts and inherently inseparable from the claims CPB and its partners brought against Chevron Australia JV in its Notice of Dispute. Every COR at issue in the Complaint is also at issue in the Notice of Dispute. The Complaint thus contains "issues referable to arbitration" pursuant to Section 3 of the FAA. *Hill*, 282 F.3d at 347.

In sum, CPB cannot prevail against Defendants without establishing that Chevron Australia JV breached the Jetty Contract and that CPB incurred damages as a result. But those issues must be determined exclusively through arbitration pursuant to the Contract's arbitration clause and the FAA. Therefore, CPB's claims must be stayed until the pending arbitration is resolved.

## IV.   IF THE ACTION IS NOT STAYED, IT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

For the reasons set forth above, this action should be stayed. In the event it is not, however, Plaintiff's claims must be dismissed because they are deficiently pled, are not sufficiently plausible to state a claim, and the "Jetty Charter" on which the second cause of action is based is not a contract.

### A.   The Claims Are Deficiently Pled.

The Complaint defines the six Defendants together as the "Chevron U.S. Defendants," and refers to them collectively in all of its substantive allegations. *See* Compl. ¶ 13. The five defendants other than Chevron Corp. are mentioned only twice in the 77 page, 422 paragraph Complaint: (1) in paragraphs 7-12, which identify their alleged places of incorporation and principal places of business; and (2) paragraphs 15-20, which allege that each defendant is authorized to do business in California. In addition to these allegations, the Complaint asserts that Defendant Chevron Corp. is the ultimate parent of Chevron Australia (Compl. ¶ 28); that the Gorgon Project Downstream Manager (¶ 300) and Gorgon Development Director allegedly worked "for" or "at" Chevron Corp. (*id.* ¶ 317); and that Chevron Corp.'s annual net income fell in recent years due to weak oil prices, cost overruns on the Gorgon Project and other factors (*id.*

¶¶ 372-385).  The allegations against the individual Defendants are plainly insufficient to state a claim for tortious inference, breach of contract or any other cause of action.

Nor can Plaintiff rely on the collective allegations against the "Chevron U.S. Defendants." In *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2012), plaintiffs brought a variety of claims against five Toyota affiliates for allegedly manufacturing, selling or leasing defective vehicles.  The Court dismissed the complaint because the "Plaintiffs have named five legally separate and distinct, albeit related entities as Defendants in this action, and factual allegations differentiating among these five entities are scant." *Id.* at 911.  "Plaintiffs do not allege that any particular Defendant engaged in any particular action; to the contrary, the [complaint] instead alleges that collectively, *all* five of the Toyota Defendants, were 'responsible for the manufacture, design, distribution, sale and lease' of the allegedly defective vehicles[.]" *Id.*  The Court held that this type of collective pleading is insufficient, and that it could not be saved by conclusorily alleging that the defendants each are agents of the others.  *Id.*

Similarly, in *Ogala v. Chevron*, 2014 WL 2089901 (N.D. Cal. May 19, 2014), the complaint referred collectively to Chevron Corp., Chevron Investments Inc., Chevron U.S.A. Inc. and Chevron Nigeria Limited as "Chevron" in all its substantive allegations.  The Court found that this made it "impossible to tell whether allegations refer to a defendant, multiple defendants, or CNL (which is not a party)."  *Id.* at *2.  "The effect is to render the Complaint so vague that it is an exercise in futility to attempt to determine which defendants (or non-parties) are referred to at various points."  *Id.  See also  Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 208 (E.D.N.Y. 2006) (allegation that "'Defendant Garcia or Defendants Langer, [Halfmann], Herb, and Brennan' 'systematically directed'" the alleged wrongful conduct failed properly to allege that any of them directed the conduct due to the use of the disjunctive).

The same reasoning applies here.  By addressing all substantive allegations to "the Chevron U.S. Defendants" collectively, the Complaint makes it impossible to determine what conduct (if any) Plaintiff intends to allege against any particular defendant.  For that reason, the Complaint is deficient and must be dismissed.

**B.     Plaintiff's Claims, As Pled, Are Not Plausible.**

Even if CPB's claims were adequately pled, which they are not, they are not plausible.  To avoid dismissal under Rule 12(b)(6), a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In evaluating whether claims are plausible, the Court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

As discussed above, the allegations of misconduct are set out in Section IV.C, IV.D and IV.G-L of the Complaint.  Each of those sections consists of a series of allegations that the Chevron Australia JV and its project manager improperly rejected CPB's CORs (*see, e.g.,* Compl. ¶¶ 35-51) followed by a paragraph conclusorily alleging that the Chevron U.S. Defendants "instructed and directed" the alleged conduct (*e.g., id.* ¶ 52).  *See also id.* ¶¶ 66, 86, 89, 97, 110, 124, 164, 179, 182, 187, 203, 218, 221, 251, 257, 266.  These conclusory allegations are insufficient to state a claim.  *See, e.g., Blantz v. Cal. Dept. of Corrections and Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) ("The only allegations that mention Hill are that, 'on information and belief,' he 'direct[ed]' the other defendants to take the actions that form the basis of the complaint . . . Conclusory allegations such as these are insufficient to state a claim against Hill.").

The Complaint does attempt in Section IV.N to describe "[t]he Chevron U.S. Defendants Extensive Involvement in the Gorgon Project."  But the allegations of Defendants' involvement are unrelated to the alleged torts for which CPB seeks to recover.  CPB conclusorily alleges that individuals who are "current and/or former employees of the Chevron U.S. Defendants" (*id.* ¶ 269) or "were, at one time or another, employed by one or more of the Chevron U.S. Defendants" (*id.* ¶ 270), participated in various aspects of the project.  But the "participation" described was in relation to establishing the initial scope of work (¶¶ 280-281), assisting with

respect to Contract amendments not in issue here (¶¶ 282-284) or other matters not related to CPB's claims. To the extent the Complaint alleges participation by individuals in issues related to change orders, it does so by way of wholly conclusory allegations that "current and/or former" employees of the Chevron U.S. Defendants "directly or indirectly participated in and/or were otherwise involved in Chevron JV's and KJV's" rejection of Plaintiff's CORs. *See* Compl. ¶¶ 302-305. These "'naked assertions' devoid of 'further factual enhancements'" are not sufficient to state a claim. *Twombly*, 550 U.S. at 557.

Moreover, unlike the allegations regarding Chevron Australia JV and KJV, the charging allegations against the Defendants all are made on "information and belief." In *Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *1 (N.D. Cal. March 19, 2014), the Court noted that under Rule 11, by submitting a pleading, "the signatory is *always* certifying that, 'to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation." Thus, "the phrase 'on information and belief' at best would constitute surplusage." *Id.* at *2. However, "[w]here, as here, some of the allegations are qualified with the phrase and others are not," it gives rise to an "inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Id.* at *2. Accordingly, the Court disregarded the allegations made on information and belief and dismissed the complaint. *See also Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, 2016 WL 2961868, at *4 (N.D. Cal. May 23, 2016) (holding that "the fact that Nationwide has hedged its allegations regarding plaintiff's supposed participation in Operation Choke Point with the phrase 'on information and belief' suggests a possibility of an undue degree of speculation on its part.").

The inference here is even stronger than in *Delphix* that the charging allegations against Defendants are pure speculation. In addition to being conclusory and made on information and belief, the allegations against Defendants are substantially identical to allegations made by CPB against a wholly different group of defendants in the Texas action. Compare paragraph 2 of the

Complaint here with paragraph 2 of the Complaint in the Texas action[6]:

- "On information and belief time and time again, the Chevron U.S. Defendants in bad faith instructed their Australian subsidiary, Chevron Australia Pty Limited ("Chevron Australia'), and other contracting parties to repeatedly and wrongfully reject Plaintiff's fully-supported "Change Order Requests," or Plaintiff's requests for adjustments to the contract price for additional work specifically requested by the project owner and/or its agent that was not within the original scope of work for the project."

- "On information and belief, time and time again, the KBR U.S. Defendants in bad faith instructed their Australian subsidiary, KBR E&C Australia Pty Limited ("KBR Australia"), and other contracting parties to repeatedly and wrongfully reject Plaintiff's fully-supported "Change Order Requests," or Plaintiff's requests for adjustments to the contract price for additional work specifically requested by the project owner and/or its agent that was not within the original scope of work for the project."

Compare paragraph 52 of the Complaint here with paragraph 49 of the Complaint in the Texas action:

- "On information and belief, the Chevron U.S. Defendants in bad faith instructed and directed Chevron Australia and the other members of the of Chevron JV, as well as KJV, to repeatedly and wrongfully reject Plaintiff's fully-supported CORs and IPPAs on the Gorgon Project in breach of the Jetty Contract."

- "On information and belief, the KBR U.S. Defendants in bad faith instructed and directed KBR Australia and the other members of KJV to repeatedly and wrongfully reject Plaintiff's fully-supported CORs and IPPAs on the Gorgon Project in breach of the Jetty Contract."

Compare paragraph 66 of the Complaint here with Paragraph 63 of the Complaint in the Texas action:

- "On information and belief, the Chevron U.S. Defendants in bad faith instructed and directed Chevron Australia and the other members of Chevron JV, as well as KJV, to improperly and entirely reject Plaintiff's monthly IPPAs submitted on the Gorgon Project because the IPPAs included claims for unapproved CORs in direct violation of Article 20.2.6 of the Jetty Contract."

- "On information and belief, the KBR U.S. Defendants in bad faith

---

[6] The Complaint in the Texas action is attached as Exhibit 1 to the Declaration of David L. Wallach. It is subject to judicial notice as a matter of public record. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

1
2
3

"instructed and directed KBR Australia and the other members of KJV to improperly and entirely reject Plaintiff's monthly IPPAs submitted on the Gorgon Project because the IPPAs included claims for unapproved CORs in direct violation of Article 20.2.6 of the Jetty Contract."

4
5
6
7
8
9
10
11
12
13
14

These are only a few examples. All of the other charging allegations are reproduced substantially verbatim in the Texas action with "KBR U.S. Defendants" substituted for "Chevron U.S. Defendants," and "KBR Australia and other members of KJV" substituted for "Chevron Australia and other members of Chevron JV." *Compare* Compl. ¶¶ 86, 89, 97, 110, 124, 164, 179, 182, 187, 203, 218, 221, 251, 257 and 266 *with* Wallach Decl. Ex. 1 ¶¶ 83, 86, 97, 107, 121, 161, 176, 179, 184, 200, 215, 218, 248, 254 and 263. Similarly, CPB's conclusory allegations that "current or former" employees of the Chevron U.S. Defendants "directly or indirectly participated in and/or were involved in" the rejection of CPB's CORs are reproduced in the Texas complaint with the names of the relevant entities and individuals changed. *Compare* Compl. ¶¶ 302-305 *with* Wallach Ex. 1 ¶¶ 289-290.

15
16
17

In short, CPB's conclusory allegations, on information and belief, that the Chevron U.S. Defendants directed, instructed, or directly or indirectly participated in Chevron Australia JV's decision to reject CPB and its partners' CORs are insufficient to state a claim.

18

**C. The Jetty Charter Is Not a Contract.**

19
20
21
22
23
24

Plaintiff's second cause of action alleges that Defendants breached the Jetty Charter.[7] To be an enforceable contract under California law, an agreement must be sufficiently definite "for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (cites and quotes omitted). "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable."

25
26
27
28

_____
[7] As shown in footnote 1 above, the Jetty Charter is subject to judicial notice, and it is therefore properly considered on a motion to dismiss. *In re CNET Networks, Inc.*, 483 F. Supp. 2d at 953 ("On considering a motion to dismiss, judicial notice of the full text of documents referenced in a complaint is proper under the doctrine of incorporation by reference."); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998) ("if a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it.") *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006)).

*Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007).  A breach of contract claim based on an alleged agreement with terms too vague to constitute an enforceable contract is properly dismissed on the pleadings under Rule 12(b)(6).  *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 950 (N.D. Cal. 2014); *Heller v. Adobe Systems, Inc.*, 2016 WL 2996938, at *2 (N.D. Cal. May 25, 2016); *cf. Patel v. Liebermensch*, 45 Cal. 4th 344, 348 n.1 (2008) ("Whether a contract is certain enough to be enforced is a question of law for the court.").

In *Bustamante*, plaintiff and Intuit agreed to "take all steps necessary to obtain adequate funding and to formally launch [a] company" to sell Intuit's software in Mexico.  *See* 141 Cal. App. 4th at 201.  The Court held that as a matter of law this alleged agreement could not constitute an enforceable contract.  "[W]hat steps are 'necessary'?  How long were they required to continue seeking 'adequate funding'? . . . The conditions for performance are fatally uncertain."  *Id*.

Similarly, in *Terry v. Conlon*, 131 Cal. App. 4th 1445 (2005), the trial court entered judgment on a purported settlement agreement reached by the parties to a lawsuit over a testator's estate.  However, one of the parties argued that the agreement was too uncertain to constitute a contract and that the trial court therefore erred in entering judgment on it.  The Court of Appeal agreed, finding that the parties had agreed only "on the goals of the settlement," but "clearly did not agree to the means of achieving the goals."  *Id*. at 1458-1459.  For example, the parties had agreed that a property owned by the estate would be run by independent management, but "they did not agree whether there would an independent trustee or a manager, and what specific duties and the extent of power that person would have."  *Id*. at 1459.  Accordingly, the settlement agreement was not an enforceable contract.

The terms of the Jetty Charter are far more vague and indefinite than those found insufficient in *Bustamanate* and *Terry*.  Plaintiff alleges that the Jetty Charter required Defendants to "create and maintain an open, trusting, honest, and cooperative culture," "work with integrity as ONE TEAM," "support the workforce with robust leadership, timely decision making and detailed planning," "work in an environment of learning where everyone has a voice and all views are respected," "work as ONE TEAM to solve problems," "speak with one voice," and

"demonstrate a CAN-DO approach." *See* Compl. ¶¶ 414-418. As shown above, the Complaint does not contain any non-conclusory allegations of conduct by any Defendant at odds with these principles. But putting aside the dearth of relevant factual allegations, the Jetty Charter at most records a set of aspirational goals—such as "demonstrat[ing] a CAN-DO approach"—not binding contractual duties.

## V.        CONCLUSION.

CPB's causes of action are "intertwined with, and dependent upon" a contract that requires arbitration to the same extent, if not more, as the cases cited above. The claims turn on an interpretation of the Contract and the contracting parties' conduct in relation to the Contract. Whether the matters claimed in CPB's CORs were cognizable "Changes" under the Contract; whether CPB complied with the procedural requirements for COR submission; whether the CORs established entitlement and included required supporting information; whether the quantum claimed in the CORs was accurate and reasonable; whether Chevron Australia JV's determinations regarding CORs were timely and justified—these are just a few of the issues that must be decided in arbitration before CPB could ever be entitled to proceed on its claims in litigation. Accordingly, this motion should be granted. This litigation should be stayed and CPB should be compelled to arbitrate its claims in accordance with its Contract as a condition of having the stay lifted.

In the alternative, if the Court determines that a stay is not warranted at this time, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief may be granted.

Dated: September 26, 2016

Respectfully submitted,

Jones Day


By: */s/ Stephen V. O'Neal*
    STEPHEN V. O'NEAL
    KENT W. LINDSAY
    DAVID L. WALLACH

Counsel for Defendants