Robb C. Adkins (SBN: 194576)
radkins@winston.com
Krista M. Enns (SBN: 206430)
kenns@winston.com
Seth Weisburst (SBN: 259323)
sweisburst@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Paula W. Hinton (*pro hac vice*)
phinton@winston.com
Luke A. Culpepper
(*pro hac vice* admission to be filed)
lculpepper@winston.com
WINSTON & STRAWN LLP
1111 Louisiana Street, 25th Floor
Houston Texas 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Harvey Kurzweil (*pro hac vice*)
hkurzweil@winston.com
Adam J. Kaiser (*pro hac vice*)
akaiser@winston.com
Martin C. Geagan (*pro hac vice*)
mgeagan@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Ricardo E. Ugarte (*pro hac vice*)
rugarte@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Plaintiff CPB Contractors Pty Limited*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CPB CONTRACTORS PTY LIMITED, an Australian corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>CHEVRON CORPORATION, a Delaware corporation; CHEVRON U.S.A. HOLDINGS, INC., a Delaware corporation; CHEVRON U.S.A., INC., a Pennsylvania corporation; CHEVRON INVESTMENTS, INC., a Delaware corporation; CHEVRON OVERSEAS COMPANY, a Pennsylvania corporation; and CHEVRON AUSTRALIA PETROLEUM COMPANY, a Delaware corporation,<br><br>            Defendants. | **Case No. 4:16-cv-05344-CW**<br><br>Contra Costa County Superior Court<br>Case No. C16-01558<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:          November 29, 2016<br>TIME:          2:30 p.m.<br>JUDGE:          Honorable Claudia Wilken<br>COURTROOM:   Oakland Courthouse,<br>                    Courtroom 2 – 4th Floor |

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................. 1

ISSUES TO BE DECIDED ..................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 4

I.    FACTUAL BACKGROUND ........................................................................ 4

      A.    The Gorgon Project ........................................................................... 4

      B.    The Jetty Contract ............................................................................. 4

      C.    The Arbitration Agreement in the Jetty Contract and Who Can Enforce It .............. 6

      D.    The Dispute ........................................................................................ 7

      E.    Plaintiff's Notice of Dispute in Australia ........................................ 8

      F.    Plaintiff Sues the Chevron U.S. Defendants in California State Court ...................... 8

      G.    The Chevron U.S. Defendants Remove the California State Case to Federal Court .. 9

      H.    Non-Party Australian Chevron JV Demands Arbitration of Different Claims in Australia ............................................................. 10

      I.    The Chevron U.S. Defendants Seek to Compel Plaintiff to Arbitrate Against *Non-Party* Australian Chevron JV in Australia, But Not Against the Chevron U.S. Defendants ................................................................................. 10

II.   LEGAL STANDARD .................................................................................. 11

III.  ARGUMENT ............................................................................................... 12

      A.    Sections 203 and 205 of the Convention, Distinguished ................ 12

      B.    There Is No Subject-Matter Jurisdiction Under Section 203 .......... 13

      C.    For the Same Reasons, There Is No Removal Jurisdiction Under 9 U.S.C. § 205 ... 19

            1.    The Chevron U.S. Defendants Fail To Satisfy the "Relates To" Requirement Under 9 U.S.C. § 205 ...................................... 20

            2.    The Chevron U.S. Defendants Have Not Shown That They Will Participate in the Australian Arbitration or Any Other Arbitration with Plaintiff ......... 20

            3.    Under California Law, No Award Rendered in the Australian Arbitration Could Have a Preclusive Effect on This Case ............................... 22

      D.    The Chevron U.S. Defendants Also Fail to Satisfy the "Falls Under" Requirement .............................................................................. 24

IV.   CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*,
    Civ. No. 11-CV-3390, 2015 WL 1602125 (S.D. Tex. Apr. 7, 2015), *aff'd*, 814
    F.3d 300 (5th Cir. 2016) ...................................................................................14, 19

*Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*,
    169 F. Supp. 3d 523 (S.D.N.Y. 2016).............................................................................12

*Application Grp., Inc. v. Hunter Grp., Inc.*,
    61 Cal. App. 4th 881 (1998)...........................................................................................18

*Arizona v. Tohono O'odham Nation*,
    818 F.3d 549 (9th Cir. 2016) ...........................................................................................6

*Baker & Taylor, Inc. v. AlphaCraze.com Corp.*,
    602 F.3d 486 (2d Cir. 2010)...........................................................................................21

*Balen v. Holland Line Inc.*,
    583 F.3d 647 (9th Cir. 2009) .........................................................................................23

*Beech Aircraft Corp. v. Superior Court*,
    61 Cal. App. 3d 501 (Ct. App. 1976).............................................................................18

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) .........................................................................................16

*Campbell v. eBay*,
    Case No. 13-CV-2632 YGR, 2014 WL 3950671 (N.D. Cal. Aug. 11, 2014) ...............23

*Cape Flattery Ltd. v. Titan Marine*,
    607 F. Supp. 2d 1179 (D. Haw. 2009), *aff'd*, 647 F.3d 914 (9th Cir. 2011) ................24

*Celanese Corp. v. BOC Group PLC*,
    Civ. No. 3:06-CV-1462-P, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006)........14, 17, 19

*Certain Underwriters at Lloyd's London & Other Insurers Subscribing to*
    *Reinsurance Agreements F96/2992/00 and No. F97/2992/00 v. Warrantech Corp.*,
    No. 4:04-CV-208-A., 2004 WL 2203244 (N.D. Tex. Sept. 23, 2004) ....................14, 19

*Comedy Club, Inc. v. Improv West Associates*,
    553 F.3d 1277 (9th Cir. 2009) .......................................................................................16

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ..................................................................................16, 20

*Davis v. Cascade Tanks, LLC*,
    No. 3:13-CV-02119-MO, 2014 WL 3695493 (D. Or. July 24, 2014) ...........................12

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 .................................................................................................................15

ii

*Infuturia Global Ltd. v. Sequus Pharms., Inc.,*
    631 F.3d 1133 (9th Cir. 2011) .................................................................9, 12, 13, 19

*Goel v. Ramachandran,*
    823 F. Supp. 2d 206 (S.D.N.Y. 2011) ..................................................................3, 20, 21

*Hallwood Grp. Inc. v. Balestri,*
    Civil Action No. 3:10–CV–1198–K., 2010 WL 4274754 (N.D. Tex. Oct. 21,
    2010) ..................................................................................................................17

*Holzer v. Mondadori,*
    2013 WL 1104269 (S.D.N.Y. March 14, 2013) ...................................................12, 13

*Jacobs v. CBS Broadcasting Inc.,*
    291 F.3d 1173 (9th Cir. 2002) ............................................................................22

*Lively v. Wild Oats Markets, Inc.,*
    456 F.3d 933 (9th Cir. 2006) ..............................................................................24

*Cal. Ex. Rel. Lockyer v. Dynegy Inc.,*
    375 F.3d 831 (9th Cir. 2004) ..............................................................................11

*McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16,*
    859 F.2d 1382 (9th Cir. 1988) ............................................................................20

*Miller v. Tri Marine Fish Co.,*
    No. LA CV16-02203 ...........................................................................................9

*Missaghi v. Apple Inc.,*
    2013 WL 12114470 (C.D. Cal. Aug. 28, 2013) ....................................................16

*Mundi v. Union Sec. Life Ins. Co.,*
    555 F.3d 1042 (9th Cir. 2009) ........................................................................16, 20

*Oubre v. Entergy Operations, Inc.,*
    522 U.S. 422 (1988) ............................................................................................16

*Pacific Gas & Electric Company v. Bear Stearns & Co.,*
    791 P.2d 587 (Cal. 1990) .....................................................................................23

*Prograph Int'l Inc. v. Barhydt,*
    928 F. Supp. 983 (N.D. Cal. 1996) ......................................................................24

*Radware, Ltd. v. F5 Networks, Inc.,*
    Case No. C-13-02024-RMW, 2013 WL 6773799 (N.D. Cal. Dec. 23, 2013)..............24

*Rogers v. Royal Caribbean Cruise Line,*
    547 F.3d 1148 (9th Cir. 2008) (Noonan, J., dissenting) ........................................24

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,*
    641 F.2d 746 (9th Cir. 1981) ...............................................................................18

*SanDisk Corp. v. SK Hynix, Inc.,*
    84 F. Supp. 3d 1021 (N.D. Cal. 2015) ..............................................................11, 24

iii

*Scherk v. Alberto–Culver Co.*,
    417 U.S. 506 (1974).................................................................................................9

*SFA Group, LLC v. Certain Underwriters at Lloyd's, London*,
    No. CV 16-04202-GHK (JC), 2016 WL 5842180 (C.D. Cal. Sept. 29, 2016).............11

*Sherer v. Green Tree Servicing LLC*,
    548 F.3d 379 (5th Cir. 2008)...........................................................................16, 17

*Shilmann Rocbit, LLC v. American Blasting Consumables, Inc.*,
    2016 WL 5843880 (S.D.W.V. October 4, 2016)...................................................12

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................................15

*In re Tobacco Cases I*,
    124 Cal. App. 4th 1095 (2004).............................................................................20

*Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*,
    601 F.3d 329 (5th Cir. 2010)................................................................................18

*Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*,
    Civ. No. 08-1195, 2011 WL 1226464 (E.D. La. Mar. 28, 2011).........................18

*Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)..............................................................................................14

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001).........................................................................................18

*Weingarten Realty Investors v. Miller*,
    495 Fed. Appx. 418 (5th Cir. 2012).....................................................................17

*Westmoreland v. Sadoux*,
    299 F.3d 462 (5th Cir. 2002)................................................................................17

*White v. W. Title Ins. Co.*,
    710 P.2d 309 (Cal. 1985).......................................................................................6

**Statutes**

9 U.S.C. § 3...................................................................................................................11

9 U.S.C. §§ 203 and 205.............................................................................................1, 11

9 U.S.C. § 205...................................................................................................... *passim*

28 U.S.C. § 1332, § 1441(b)...........................................................................................24

28 U.S.C. § 1447(c)......................................................................................................1, 11

9 USC § 202.............................................................................................................19, 24

9 USC § 203......................................................................................................... *passim*

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 29, 2016 at 2:30 p.m., before the Honorable Claudia Wilken, Senior District Judge, at the U.S. District Court, Northern District of California, 1301 Clay Street, Oakland, CA 94612, Courtroom 2, 4th Floor, Plaintiff CPB Contractors Pty Limited ("Plaintiff") will move this Court for an order, pursuant to 28 U.S.C. § 1447(c), to remand this action to the Superior Court of the State of California, County of Contra Costa. Plaintiff files this motion on the ground that removing defendants Chevron Corporation, Chevron U.S.A. Holdings, Inc., Chevron U.S.A., Inc., Chevron Investments, Inc., Chevron Overseas Company, and Chevron Australia Petroleum Company (collectively, "the Chevron U.S. Defendants") have not met their burden of showing that this Court has removal jurisdiction under 9 U.S.C. § 205 or original jurisdiction under Section 203, the only basis for removal and jurisdiction set forth in their Joint Notice of Removal (ECF 1). More specifically, they have not met their burden under Section 205 of showing that the subject matter of the action "relates to" an arbitration agreement that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention" or "New York Convention"). Nor have they met their burden under Section 203 of showing that the dispute at issue "falls under" an arbitration agreement that is subject to the Convention and that the Chevron U.S. Defendants are entitled to compel arbitration. Indeed, because the Chevron U.S. Defendants do not seek to compel arbitration, there can be no federal subject-matter jurisdiction under Section 203.

This motion is based on this Notice of Motion and Motion to Remand, the Memorandum of Points and Authorities in Support Thereof, the Proposed Order filed herewith, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## SUMMARY OF ARGUMENT

The New York Convention, specifically 9 U.S.C. §§ 203 and 205, allows a defendant to remove a case to federal court and invoke federal subject-matter jurisdiction only where: (i) the claims against the defendant are subject to arbitration; and (ii) the defendant seeks to compel arbitration. Here, neither is true.

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- CASE No. 4:16-CV-05344-CW

As demonstrated below, the claims against the Chevron U.S. Defendants are not arbitrable under any theory. The Chevron U.S. Defendants are not parties to any arbitration agreement, so there is no contractual basis to compel arbitration. Any arbitration between these parties would thus be a matter of coercion, not consent. Nor does the doctrine of "equitable estoppel" permit the Chevron U.S. Defendants to seek arbitration here, even assuming California's law of equitable estoppel applies (though the Jetty Contract is expressly governed by Western Australian law, which does not recognize the doctrine of equitable estoppel). Significantly, although one would not know it from the Chevron U.S. Defendants' papers, the *underlying contract at issue—the "Jetty Contract"—specifically and purposefully limited arbitration to the contract's signatories*. In fact, the Jetty Contract refers to the Chevron U.S. Defendants *forty-seven separate times*, as part of the defined term, the "Owner Group." And when these sophisticated, counseled parties put pen to paper, they specifically and purposefully did not include the "Owner Group" among the entities that could seek arbitration, or otherwise be bound to arbitrate. To the contrary, in order to avoid blurring any distinction between and among the parties' rights and obligations, the Jetty Contract specifically provides that unless expressly stated in the Contract, the rights and obligations of each party are absolutely limited to those precisely delineated in writing. The absence of the Owner Group from the arbitration clause thus means that the parties purposefully decided not to impose the burdens and benefits of arbitration on the members of that Group. The parties came to that agreement precisely because the Chevron U.S. Defendants did not want to be dragged into a foreign arbitration on the other side of the world.

Under settled law, as described below, because the arbitration agreement expressly omitted any reference to the "Owner Group," the Chevron U.S. Defendants cannot now invoke non-contractual doctrines such as equitable estoppel to seek arbitration. To allow otherwise would completely undermine the parties' express agreement as to who would, and would not, enjoy the benefits and bear the burdens of arbitration, and would effectively require the Court to rewrite a heavily-negotiated contract between sophisticated, counseled parties, to the benefit of one party and to the detriment of the other.

Even if equitable estoppel could theoretically be invoked despite the parties' express

contractual bargain that the Chevron U.S. Defendants would not be subject to arbitration and could not compel arbitration, and assuming—albeit improbably—that California law even applied, the Convention would still be inapplicable because the Chevron U.S. Defendants do not actually seek to compel arbitration of the claims asserted against them here. To the contrary, the Chevron U.S. Defendants seek to compel Plaintiff to arbitrate disputes that are *not* before this Court against *non-party* contract signatories—namely, the Australian subsidiaries that contracted with Plaintiff—while the case against them is stayed. But that is not enough to trigger the Convention. For the Convention to apply, the defendant invoking it must in fact be willing to arbitrate the underlying dispute. *See Goel v. Ramachandran*, 823 F. Supp. 2d 206, 212 (S.D.N.Y. 2011) (where removing defendant does not intend to participate in an arbitration, as a matter of law, defendant fails to meet its burden of showing that pending case "relates to" agreement to arbitrate under § 205). Under settled law, there is no federal subject-matter jurisdiction under § 203 unless the removing party seeks to compel arbitration of the claims against it, which the Chevron U.S. Defendants do not seek.

Here, the Chevron U.S. Defendants do not want to litigate, and they do not want to arbitrate. They simply want to be left alone. But the Convention cannot be used to insulate a defendant from having to defend claims in any forum at all. According to the Chevron U.S. Defendants, they can invoke the Convention, urge arbitration abstractly, but not seek it for themselves, and avoid having to defend claims anywhere. That is not only unprecedented, and plainly contrary to law, it is also unprincipled. The purpose of the Convention is to enforce international arbitration agreements so that commercial parties can utilize an efficient and cost-effective neutral process to resolve disputes. Its purpose is not to deprive foreign companies from having any forum at all to pursue their claims, which is what the Chevron U.S. Defendants actually seek to do here.

At core, the Chevron U.S. Defendants are using the Convention not to arbitrate (which is the purpose of the Convention), but improperly as a basis to stay this case while *other parties* arbitrate *different claims*. While the Chevron U.S. Defendants are entitled to seek a stay on traditional grounds once the case is remanded, they cannot invoke the Convention to remove this case and then not arbitrate, effectively only seeking to stay the case while in federal court, under the subterfuge that there is original jurisdiction under § 203, because no § 203 jurisdiction exists as a result of them

not seeking to compel arbitration.

## ISSUES TO BE DECIDED

1.     Whether the Chevron U.S. Defendants have met their burden of showing that this Court has removal jurisdiction under 9 U.S.C. § 205 or original jurisdiction under § 203.

2.     Whether the Chevron U.S. Defendants have met their burden of showing that the subject matter of this case "relates to" a pending arbitration under 9 U.S.C. § 205.

3.     Whether the Chevron U.S. Defendants have met their burden of showing that Plaintiff's state-court complaint "falls under" an arbitration agreement that is subject to the New York Convention, and specifically that there is an agreement in writing to arbitrate the subject of the specific disputes in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     FACTUAL BACKGROUND

### A.     The Gorgon Project

As detailed in the Complaint, Plaintiff was awarded a bid as the main contractor for the construction of a 1.3-mile-long jetty (the "Gorgon Jetty") for a liquefied natural gas ("LNG") project located on and near Barrow Island off the coast of Western Australia (the "Gorgon Project"). *See* Complaint (ECF 2-1) ("Compl.") ¶ 22. The Gorgon Project was a high-profile and extremely complex international construction project that incurred significant cost overruns largely due to, among other things, unprecedented environmental requirements and severe weather conditions. *See id.* ¶¶ 1, 23-27, 90-124. The owner of the Gorgon Project is a joint venture comprising numerous entities, including, among others, Chevron Australia Pty Ltd. ("Chevron Australia"), an Australian partially-owned subsidiary of U.S. Defendant Chevron Corporation (collectively, with the other members of the joint venture, the "Australian Chevron JV"). *See id.* ¶¶ 28-30.

### B.     The Jetty Contract

On November 10, 2009, Plaintiff, as part of the Saipem Leighton Consortium ("SLC"), entered into the "Jetty Contract" to serve as the main contractor for the design and construction of the Gorgon Jetty. *See id.* ¶ 32; Jetty Contract (ECF 2-3). Following amendment of the Jetty Contract in March 2010, the overall contract price of the Jetty Contract was AU$993.9 million, with

the overall amount of AU$712.7 million payable to Plaintiff (the "Contract Price"). *See* Compl. (ECF 2-1) ¶¶ 33-34. On June 8, 2012, the parties executed another amendment to the Jetty Contract, which they refer to as the Deed of Settlement and Release ("DOS"). *Id.* ¶ 76.

The Chevron U.S. Defendants are *not* parties to the Jetty Contract or the DOS. Notice of Removal (ECF 1) ¶¶ 4, 18. Rather, the Chevron U.S. Defendants are the *U.S.-based* corporate parents and affiliates of Chevron Australia. *See id.* ¶¶ 2, 28; *see also* Motion[1] (ECF 10) at 1:24-25 (conceding that "Plaintiff has sued parent and affiliate companies of Chevron Australia"). Although not parties to the Jetty Contract, the Chevron U.S. Defendants are referenced repeatedly in the Jetty Contract. The Jetty Contact contains separate defined terms for "*Owner*,"[2] which solely refers to the Australian Chevron JV, and "*Owner Group*,"[3] which refers to the "parent" and "affiliates" of Chevron Australia, including the Chevron U.S. Defendants. The two distinct terms are interspersed throughout the Jetty Contract, with certain provisions specifically applying to the "*Owner Group*" (*i.e.*, including the Chevron U.S. Defendants), and certain provisions solely applying to the "*Owner*" (*i.e.*, Australian Chevron JV. The *Owner Group*—of which the Chevron U.S. Defendants are a part—is referenced in the Jetty Contract forty-seven separate times.[4]

---

[1] As used herein, the term "Motion" refers to the Chevron U.S. Defendants' Motion to Stay and to Compel Arbitration, or in the Alternative, to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (ECF 10).

[2] Article 1.54 of the Jetty Contract provides that "'Owner' shall mean the specific legal entity or entities expressly identified as 'Owner' in the Form of Agreement and its successors and assigns." Jetty Contract (ECF 2-3), Art. 1.54. The Form of Agreement, in turn, defines the "Owner" as "Chevron Australia Pty Ltd . . . on behalf of and as joint venture operator of the Gorgon Participants," or the Australian Chevron JV. *Id.* Form of Agreement, at 2.

[3] Article 1.55 of the Jetty Contract provides that "'Owner Group' shall mean Owner and Affiliates of Owner and such other companies now, or may from time to time hold any economic interest of Owner, or an Affiliate of Owner, in the Project and/or in the product produced or to be produced therefrom, including their agents, consultants, invitees, *parent(s)*, assignees, subsidiaries, and any director, agent, representative or Employee of any of them . . . ."). Jetty Contract (ECF 2-3), Art. 1.55 (emphasis added).

[4] Annexed hereto as Exhibit A is a table listing the numerous provisions in the Jetty Contract that specifically refer to the "Owner Group" (*i.e.*, including the Chevron U.S. Defendants).

### C.    The Arbitration Agreement in the Jetty Contract and Who Can Enforce It

The Jetty Contract contains an alternative dispute resolution provision, including a section requiring binding arbitration. *See* Jetty Contract, (ECF 2-3), Art. 21.2. By its terms, this Article provides that after certain prerequisites are met, "either *Contractor* or *Owner* may initiate binding arbitration." *Id.*, Art. 21.2.1 (emphasis added). The Chevron U.S. Defendants are neither. The term "*Contractor*" is defined as "that specific legal entity or entities expressly identified as 'Contractor' in the Form of Agreement and its successors and assigns." *Id.*, Art. 1.17. The Form of Agreement, in turn, uses the term "*Contractor*" to refer jointly and severally to SLC, and thus includes Leighton Contractors Pty Limited (Plaintiff's f/k/a). *See id.*, Form of Agreement, at 2; Compl. (ECF 2-1) at 1:1-2. "*Owner*" is defined as "that specific legal entity or entities expressly identified as '*Owner*' in the Form of Agreement and its successors and assigns." Jetty Contract (ECF 2-3), Art. 1.54. The Form of Agreement, in turn, identifies non-party Australian Chevron JV as "*Owner.*" *Id.* Form of Agreement, at 2. There is no reference to non-signatories, including the Owner Group, in Article 21.2. While the parties identified rights and privileges of the Owner Group in *forty-seven* other places in the Jetty Contract, they did not do so in Article 21.2.[5]

What is more, the Jetty Contract expressly sets forth the parties' agreement that non-signatories, such as the Owner Group, would *not* have rights or responsibilities under the Jetty Contract, except as expressly provided by the contract:

> Except as expressly provided herein (for example Owner Group and Company Group indemnity and insurance rights), there are no third party beneficiaries of this Agreement. ***The obligations and legal duties imposed on Owner, Company or Contractor by this Agreement are owed exclusively to the Owner, Company or Contractor and are not owed to any person not a signatory hereunder***.

Jetty Contract (ECF 2-3), Form of Agreement, ¶ 10 (emphasis added).

---

[5] It is settled law that the expression in a contract of one or more things of a class implies the exclusion of all not expressed under the doctrine of *expressio unius est exclusio alterius*. *See White v. W. Title Ins. Co.*, 710 P.2d 309, 314 n.4 (Cal. 1985). Here, because the parties carefully listed who would enjoy the benefits and burdens of arbitration so precisely, and limited them to the "Owner," but *not* the "Owner Group," their omission can only be reasonably interpreted as intentional, which is supported by the fact that this the Jetty Contract was a heavily-negotiated contract between sophisticated, well-counseled parties. *See, e.g.*, *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 553 (9th Cir. 2016) (holding that where sophisticated counseled parties extensively negotiated detailed contract, court would "hold the parties to their words").

Article 21.2 explicitly does not provide for arbitration against, or by, the Owner Group. Had the parties wanted to sweep the Owner Group into Article 21.2, they could have easily done that. But these sophisticated and well-counseled parties chose not to, and instead chose to make crystal clear, in Article 10 of the Form of Agreement excerpted above, that all obligations and duties running to the Owner are "exclusively" those of the Owner, and *not* the Owner Group. No doubt, the Owner Group, including the Chevron U.S. Defendants, believed this protected them—for liability, tax, regulatory, and other reasons. As it concerned arbitration, the exclusion of Owner Group precluded Plaintiff from forcing the Owner Group, including the Chevron U.S. Defendants, into an arbitration on the other side of the globe, with all the associated costs and dislocation. Yet now, because it suits them, the Chevron U.S. Defendants ask the Court to cast aside the parties' express agreement so that the Jetty Contract is read to provide them with the unilateral option of invoking the arbitration provision from which *they intentionally and explicitly excluded themselves*.

### D.    The Dispute

The events leading up to the filing of this case arose in connection with the Gorgon Project. Due to unprecedented environmental requirements, and extreme weather conditions, among other things, the Gorgon Project experienced massive cost overruns over the course of the entire project. *See* Compl. (ECF 2-1) ¶¶ 1, 3-4, 90-124, 329-391. This occurred while the market price for crude oil plummeted, thereby throwing the Chevron U.S. Defendants' expectations for LNG demand into disarray. *See id.* ¶¶ 352-371. To address the increased costs associated with changes to the scope of the work (*i.e.*, adjustments to the Contract Price) and/or to request extensions of time to the overall schedule on the Gorgon Project, the Jetty Contract required Plaintiff to submit Change Order Requests ("CORs") to the Australian Chevron JV. *Id.* ¶ 35. As detailed in the Complaint, throughout the course of the Gorgon Project, the Chevron U.S. Defendants repeatedly engaged in bad-faith and wrongful conduct that undermined and frustrated Plaintiff's efforts to complete the work on the Gorgon Project.[6] Specifically, time and again, the Chevron U.S. Defendants repeatedly and wrongfully instructed Chevron Australia and the other members of the Australian Chevron JV in

---

[6] *See, e.g.*, *id.* ¶¶ 35-66, 82-266.

bad faith to reject Plaintiff's fully-supported CORs and other payment claims in flagrant disregard of the governing contract documents and in contravention of the reality on the ground.[7]

### E. **Plaintiff's Notice of Dispute in Australia**

After the Australian Chevron JV sent Plaintiff its final rejection of *all* of Plaintiff's payment claims on the Gorgon Project, on February 9, 2016, Plaintiff (as part of SLC) served a Notice of Dispute on the Australian Chevron JV ("NOD") in compliance with Article 21.2 of the Jetty Contract. *See* NOD (ECF 2-5). The NOD referred specific disputed CORs and other payment disputes on the Gorgon Project to structured "direct negotiations" between Plaintiff and the Australian Chevron JV, among other parties. *See id.* at 2; *see also* Jetty Contract (ECF 2-3), Art. 21.2.1. This NOD is a first step, one which is required before either Plaintiff (as Contractor) or Owner can commence binding arbitration under Article 21.2. *See* Jetty Contract (ECF 2-3), Art. 21.2.1.

### F. **Plaintiff Sues the Chevron U.S. Defendants in California State Court**

On August 19, 2016, Plaintiff sued the Chevron U.S. Defendants in Contra Costa County Superior Court asserting two state-law claims: (i) intentional interference with the Jetty Contract; and (ii) breach of the Jetty Charter.[8] Plaintiff asserts claims in the Complaint solely against the Chevron *U.S.* Defendants, and is *not* suing in this action any of the Australian entities involved with the Gorgon Project, including Chevron Australia and the other members of the Australian Chevron JV.

The claims in Plaintiff's NOD submitted in Australia concern the Australian Chevron JV's conduct *in Australia* in connection with its specific breaches of the Jetty Contract, of which it was a signatory. Conversely, this litigation is brought against the Chevron U.S. Defendants for: (i) their

---

[7] *See, e.g.*, Compl. ¶¶ 52, 65-66, 86, 89, 97, 110, 123-24, 153, 162, 179, 182, 184-87, 203, 218, 221, 249, 251, 257, 266, 396, 401.

[8] Throughout the course of the Gorgon Project, Plaintiff repeatedly advised the Australian Chevron JV that its dilatory and egregious conduct needed to improve for the Project to be successful. *See* Compl. ¶ 67 (ECF 2-1). In response, Plaintiff (as part of SLC), the Australian Chevron JV, and the Chevron U.S. Defendants, among others, entered into a second and separate contract, the "Jetty Charter." *Id.* ¶¶ 67-75; Jetty Charter (ECF 2-6). Under the Jetty Charter, the parties committed to, among other things, work together and to "do what we say we will do" to ensure that the Project was successfully completed. *See* Compl. (ECF 2-1) ¶¶ 67-75. Importantly, the Jetty Charter does *not* contain an arbitration agreement.

wrongful and tortious conduct *in the U.S.*, and specifically their intentional acts designed to induce a breach or disruption of the Jetty Contract and/or the DOS; and (ii) their breach of the Jetty Charter.[9] Plaintiff asserts claims against the six specific Chevron U.S. Defendants which, based on Plaintiff's independent investigation and information and belief, employed individuals who were involved with the Gorgon Project generally and with the Chevron U.S. Defendants' wrongful and tortious conduct.[10]

### G.   The Chevron U.S. Defendants Remove the California State Case to Federal Court

On September 19, 2016, the Chevron U.S. Defendants removed Plaintiff's case to this Court. *See* Joint Notice of Removal (ECF 1).  According to the Joint Notice of Removal, their basis for "removal jurisdiction" is the New York Convention.  "The [New York] Convention is a multilateral treaty providing for 'the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought.'" *Miller v. Tri Marine Fish Co.*, No. LA CV16-02203 JAK (SSx), 2016 WL 3545523, at *3 (C.D. Cal. June 28, 2016) (quoting Convention, art. I(1), 21).  "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  In the U.S., the New York Convention is codified at Chapter II of the Federal Arbitration Act (the "Act"), 9 U.S.C. § 201, *et seq.  See Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1135 (9th Cir. 2011). The Chevron U.S. Defendants claim removal under the Convention is proper because there is an arbitration clause in the Jetty Contract.  *See* Joint Notice of Removal (ECF 1) at ¶ 5.

---

[9] *See, e.g.*, *id.* ¶¶ 52, 65-66, 86, 89, 97, 110, 123-24, 153, 162, 179, 182, 184-87, 203, 218, 221, 249, 251, 257, 266, 396, 401.

[10] *See, e.g.*, *id.* ¶¶ 269-328.

9

### H. Non-Party Australian Chevron JV Demands Arbitration of Different Claims in Australia

On behalf of *non-party* Australian Chevron JV, non-party Chevron Australia initiated arbitration "against CPB and its consortium partners" in Australia. Mot. (ECF 10) at 2:15-16. Although Chevron Australia's Notice of Arbitration ("NOA") is signed on September 19, 2016, Chevron Australia actually submitted it on September 20, 2016—the day *after* the Chevron U.S. Defendants removed the case to this Court. *See* Mot. (ECF 10) at 10:2; NOA (ECF 10-8). The NOA "seek[s] an affirmative recovery against SLC for its breaches of the Jetty Contract, and a determination of final amounts due, if any, to CPB and its consortium members under the terms of the Jetty Contract." Mot. (ECF 10) at 10:3-5. Unless the parties agree otherwise, the arbitration is to take place in Australia (hereinafter, the arbitration will be referred to as the "Australian Arbitration"). Jetty Contract (ECF 2-3), Art. 21.2.2 (ECF 2-3). ***Importantly, none of the Chevron U.S. Defendants is a party to the Australian Arbitration.*** Nor is there any evidence in the record that the Chevron U.S. Defendants will participate in the Australian Arbitration if the Court were to enter an order compelling arbitration here.

### I. The Chevron U.S. Defendants Seek to Compel Plaintiff to Arbitrate Against *Non-Party* Australian Chevron JV in Australia, But *Not* Against the Chevron U.S. Defendants

On September 26, 2016, the Chevron U.S. Defendants filed a Motion to Stay and to Compel Arbitration, or in the Alternative, to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (the "Motion") (ECF 10). Despite the misleading title of their motion, the Chevron U.S. Defendants are actually *not* seeking to compel Plaintiff to arbitrate its claims ***against them***. Nor are they committing to arbitrate should Plaintiff demand arbitration against them. Rather, they are asking the Court to enter an order requiring Plaintiff to arbitrate against ***non-party*** Australian Chevron JV in the Australian Arbitration. Curiously, Chevron Australia and the other members of the Australian Chevron JV that initiated the Australian Arbitration—while obviously necessary and indispensable parties to this case given that their purported rights are being adjudicated—were *not* joined as nominal defendants in this action by the Chevron U.S. Defendants.

The Chevron U.S. Defendants are clearly not seeking to compel arbitration of the claims

asserted against them in this lawsuit.  Indeed, their proposed form of order asks the Court to enter an order that directs Plaintiff "to arbitrate *its claims for alleged breaches* of the Jetty Contract in accordance with the contract's arbitration agreement."  Proposed Order (ECF 10-9) at 2 (emphasis added).  There are no claims for breach of the Jetty Contract in this case.  Similarly, in the Motion, the Chevron U.S. Defendants seek the following relief:  "[a]n order staying this litigation pursuant to 9 U.S.C. § 3 and *compelling Plaintiff to arbitrate its claims in accordance with its contract* as a condition of having the stay lifted."  Motion (ECF 10) at 1:9-10 (emphasis added).  In addition, when discussing the arbitration they are seeking to compel, the only participants the Chevron U.S. Defendants envision are Plaintiff and *non-party* Australian Chevron JV.  *Id.* at 12:12-17 ("If CPB fails in the arbitration to prevail on its claims *against Chevron Australia JV* for allegedly breaching the Jetty Contract, then its claims against the Chevron U.S. Defendants necessarily fail.  On the other hand, if [Plaintiff] prevails on any of its claims in the arbitration, the arbitral tribunal will determine the quantum of any compensatory damages and issue an award in that amount.  Thus, *regardless of which party prevails, the arbitration will moot this action*.") (emphasis added).  If the Chevron U.S. Defendants want to compel arbitration of the claims asserted *in this case*, they have not yet sought that relief.  Further, the Chevron U.S. Defendants largely ignore Plaintiff's claim against them for breach of the Jetty Charter in both their argument and proposed order.  *See id.*; *see also* Proposed Order (ECF 10-9) at 2.

## II.    LEGAL STANDARD

Even when a plaintiff seeks remand under 28 U.S.C. § 1447(c), the removing party bears the burden of establishing federal  jurisdiction.  *See Cal. Ex. Rel. Lockyer v. Dynegy Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute"); *SFA Group, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 16-04202-GHK (JC), 2016 WL 5842180, at *2 (C.D. Cal. Sept. 29, 2016).  If the removing defendant fails to meet its burden, the case must be remanded.  *See* 28 U.S.C. § 1447(c); *SanDisk Corp. v. SK Hynix, Inc.*, 84 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015).

11

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- CASE NO. 4:16-CV-05344-CW

**III.**    **ARGUMENT**

     **A.**     **Sections 203 and 205 of the Convention, Distinguished**

       Section 205 of the Convention (9 U.S.C. § 205) allows for removal of actions where "(1) there is an arbitration agreement (or award) that 'fall[s] under the Convention,' and (2) "'the subject matter of an action or proceeding pending in a State court relates to' that arbitration agreement." *Davis v. Cascade Tanks, LLC*, No. 3:13-CV-02119-MO, 2014 WL 3695493, at *4 (D. Or. July 24, 2014) (quoting 9 U.S.C. § 205). This is a broad standard that allows for relatively liberal removal of actions to federal court. But as noted by the Ninth Circuit, in cases governed by the Convention, there must be "*both* removal jurisdiction *and* subject-matter jurisdiction to hear a case removed from state court." *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133, n.1 (9th Cir. 2011) (emphasis added). The Chevron U.S. Defendants ignore the second requirement.

       While Section 205 provides a modest standard for removal, subject-matter jurisdiction must exist under Section 203 or else the case must be remanded to state court.[11] And, courts have repeatedly held that, while Section 205 provides for easy removal, Section 203's grant of federal subject-matter jurisdiction is "narrow." *See e.g., Shilmann Rocbit, LLC v. American Blasting Consumables, Inc.*, 2016 WL 5843880, at * 6 (S.D.W.V. October 4, 2016) ("courts … have interpreted § 203's 'grant narrowly, limiting in scope to actions to compel, confirm, or vacate an arbitral award,'" and citing cases) (citation omitted); *see also Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*, 169 F. Supp.3d 523, 527-29 (S.D.N.Y. 2016) (§ 205 only provides for removal—for jurisdiction to exist there must be subject-matter jurisdiction under § 203, which is narrowly limited to actions to compel arbitration, or to confirm or vacate an award); *Holzer v. Mondadori*, No. 12 Civ. Civ. 5234(NRB), 2013 WL 1104269, * 6 (S.D.N.Y. March 14, 2013) ("while Section 203 of the FAA provides the requisite statutory grant of jurisdiction, the Second Circuit has interpreted that grant narrowly, limiting it to actions to compel, confirm, or vacate an arbitral award").

---

[11] Section 203 provides: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

Although glossed over by the Chevron U.S. Defendants, § 205 of the Convention does *not* create subject-matter jurisdiction. Courts "treat removal authorization under Section 205 as distinct from subject-matter jurisdiction under Section 203." *Albaniabeg Ambient Sh.p.k.*, 169 F. Supp. 3d at 528; *see also Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, n. 1 (9th Cir. 2011). A defendant may easily remove a case under Section 205, but all that does is allow the federal court to hear an application to compel arbitration, or to confirm or vacate an award. *Albaniabeg*, 169 F. Supp. 3d at 528. If the court determines that no such relief is available, there is no original jurisdiction under Section 203, and hence, the case must be remanded. *Id*. And by definition, if a party does not even *seek* such relief, there is no § 203 subject-matter jurisdiction. That is precisely the case here.

## B.    There Is No Subject-Matter Jurisdiction Under Section 203

Because the Chevron U.S. Defendants do not seek to compel arbitration of the claims asserted *against them*, there can be no subject-matter jurisdiction under Section 203. *See Albaniabeg Ambient Sh.p.k.*, 169 F. Supp. 3d at 529 (finding no federal subject-matter jurisdiction under § 203 where case was removed under § 205 because no party sought to compel arbitration, or vacate or confirm an award; rather defendant sought just to enforce judgment stemming from arbitration, which was sufficient to remove under § 205 but insufficient to sustain subject-matter jurisdiction under § 203); *see also Holzer*, 2013 WL 1104269, at *6 (under § 203, "[i]f none of plaintiffs' claims is arbitrable, we must remand the entire action to state court"). That is, it is *ipso facto* true that because the Chevron U.S. Defendants have not sought to compel arbitration of the claims in the Complaint asserted against them, there can be, and is no, original jurisdiction under § 203.

In *Beiser v. Weyler*, which the Ninth Circuit in *Infuturia* adopted, the Fifth Circuit made clear that in a case *initially* removed under Section 205, the case must be remanded to state court for lack of federal subject-matter jurisdiction if a district court ultimately determines that an arbitration agreement does *not* provide a defense (that is, that there is no subject-matter jurisdiction under § 203), and there are no other grounds for federal jurisdiction:

> Under § 205 . . . *the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits*. The arbitrability of a dispute will ordinarily be the first issue

13

> the district court decides after removal under § 205. *If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.*

284 F.3d 665, 674-75 (5th Cir. 2002) (emphasis added) (citing 28 U.S.C. § 1441(c)).; *see also Infuturia*, 631 F.3d at 1137-38 (adopting *Beiser* analysis).

Following *Beiser*, federal courts have repeatedly remanded cases asserting state-law claims *initially* removed under Section 205 on the ground that the claims "relate[d] to" an arbitration agreement, where, as here, the arbitration clause did *not* provide a defense to the state-law claims asserted in the action. *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, Civ. No. 11-CV-3390, 2015 WL 1602125, at *8-10 (S.D. Tex. Apr. 7, 2015) (where case was initially removed under § 205 under "relates to" standard, holding that "[r]emand of the remaining non-arbitrable claims is . . . appropriate" after court denied motion to compel arbitration), *aff'd*, 814 F.3d 300 (5th Cir. 2016); *QPro Inc. Rtd Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 504 (S.D. Tex. 2011) (same, finding that "[o]nce the basis for federal question jurisdiction ceases to exist, or as in the instant case, when arbitrability is the basis for jurisdiction and can no longer be asserted as a defense, *the case should be remanded for resolution of the state law claims*") (emphasis added); *Celanese Corp. v. BOC Group PLC*, Civ. No. 3:06-CV-1462-P, 2006 WL 3513633, at *8 (N.D. Tex. Dec. 6, 2006) (remanding case under *Beiser* because "[a]ll of Plaintiffs' claims are based on state law and the Court has found such claims are not arbitrable; absent § 205, no other basis for federal [removal] jurisdiction exists"); *cf. Certain Underwriters at Lloyd's London & Other Insurers Subscribing to Reinsurance Agreements F96/2992/00 and No. F97/2992/00 v. Warrantech Corp.*, No. 4:04-CV-208-A., 2004 WL 2203244, at *3 (N.D. Tex. Sept. 23, 2004) ("*Consistent with the expectations of the Fifth Circuit*, now that the arbitration award issues have been removed from this case . . . and there being 'no other grounds for federal jurisdiction in this case, *the case should be remanded to the state court*.") (emphasis added).

Here, because the Chevron U.S. Defendants do not even seek arbitration of Plaintiff's claims asserted against them in this case, the analysis of whether there exists federal subject-matter jurisdiction under § 203 is straightforward: it does not exist, and hence remand is required.

14

We further note that, although the Chevron U.S. Defendants do not actually seek to compel arbitration of Plaintiff's claims asserted against them—and thus whether they may do so under some non-contractual theory is irrelevant—the Chevron U.S. Defendants cannot plausibly seek to compel arbitration. The Act "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Scs., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) (citation omitted). It is black-letter law that parties to an agreement may "specify *with whom* they choose to arbitrate" just as they may "limit the issues they choose to arbitrate." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasis added); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 ("[N]othing in the [Act] authorizes a court to compel arbitration of any issues, *or by any parties*, that are not already covered in the agreement.") (emphasis added).

Here the parties to the Jetty Contract did exactly that. As expressly set forth in the Jetty Contract, the parties thereto owe ***no*** duties or obligations to non-parties except as otherwise provided by the contract:

> Except as expressly provided herein (for example Owner Group and Company Group indemnity and insurance rights), there are no third party beneficiaries of this Agreement. ***The obligations and legal duties imposed on Owner, Company or Contractor by this Agreement are owed exclusively to the Owner, Company or Contractor and are not owed to any person not a signatory hereunder***.

Jetty Contract (ECF 2-3), Form of Agreement, ¶ 10 (emphasis added). The alternative dispute resolution provision in Article 21 of the Jetty Contract does not provide otherwise.

Further, the parties to the Jetty Contract are sophisticated and were represented by experienced counsel. This was a multi-billion dollar contract involving multiple parties from different countries, consortiums, and groups. Chevron is one of the largest companies in the world, and does not claim scrivener's error. The Jetty Contract itself is the product of extensive negotiation and drafting. All parties agreed who would be subject to which terms, and who would not. Article 21 does not apply to the Owner Group, and Article 10 of the Form of Agreement precludes any plausible interpretation of Article 21 that would expand it to include the Owner Group, including the Chevron U.S. Defendants. The parties and non-parties that contributed to the drafting of the Jetty Contract referred to the Owner Group *forty-seven separate* times, but, purposefully, did *not* refer to

15

the Owner Group in Article 21. To now conclude that Article 21 reaches the Owner Group would require a wholesale rewriting of the Jetty Contract.[12]

Without any contractual basis whatsoever to argue that claims against them are subject to arbitration (and without actually seeking arbitration), the Chevron U.S. Defendants also claim that they, as non-signatories, can invoke the doctrine of equitable estoppel. *See* Joint Notice of Removal (ECF 1) at ¶ 18. While this doctrine is irrelevant because the Chevron U.S. Defendants do not actually seek to compel arbitration of Plaintiff's claims (and hence the issue of whether they could do so under this doctrine is of academic interest only), the doctrine does not apply here—even assuming California law applied to the issue despite the choice-of-law clause in the Jetty Contract providing for the application of Western Australian law. *See infra*, at 18.

Because of the presumption that non-signatories to an arbitration agreement are not bound by its terms, "[a]rbitration agreements apply to nonsignatories *only in rare circumstances*." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003) (emphasis added); *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) ("generally arbitration clauses and contracts do not bind non-parties in the absence of such extraordinary relationships"); *Missaghi v. Apple Inc.*, 2013 WL 12114470 at *4 (C.D. Cal. Aug. 28, 2013) ("The Ninth Circuit has taken a similar view to that of the Fifth Circuit which has bluntly stated, 'a nonsignatory [will be allowed] to invoke an arbitration agreement only in rare circumstances.") (citation omitted). One such "rare circumstance" is where the doctrine of equitable estoppel applies. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposed." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009) (citation omitted); *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426 (1988) ("As a rule, equitable estoppel bars a party from shirking the burdens of a voidable transaction for as long as she retains the benefits received under it.").

---

[12] As noted above, the Jetty Charter—to which the Chevron U.S. Defendants are parties—does not even include an arbitration agreement under which the Chevron U.S. Defendants could seek to compel arbitration of Plaintiff's claim for breach of the Jetty Charter.

Equitable estoppel, however, only applies where the contract itself does *not* address who is actually bound by the arbitration agreement. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008). Indeed, only if the agreement "fails" to address who is bound by the agreement should a court "look to theories such as equitable estoppel to determine whether a nonsignatory may compel arbitration." *Id.* (reversing district court that applied doctrine of equitable estoppel where contract expressly addressed who was bound by arbitration agreement); *see also Weingarten Realty Investors v. Miller*, 495 Fed. App'x 418, at *4 (5th Cir. 2012) (rejecting non-party's assertion of equitable estoppel to enforce arbitration agreement because arbitration provision expressly provided that *only contracting parties* could seek arbitration). That is, the court should review the contract as a whole, and if the parties appear to have purposefully excluded non-signatories from invoking the arbitration agreement, the Court should not, under the guise of "equitable estoppel," redo the bargain, rewrite the contract, and compel arbitration.

Thus, non-signatories cannot invoke equitable estoppel where they "elected to interpose liability insulating entities" between themselves and the plaintiffs, as is precisely the case here. *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002). And equitable estoppel cannot be invoked where, as here, the non-signatories "*expressly excluded themselves as a party to the arbitration clause*." *See Celanese Corp.*, 2006 WL 3513633, at *3, 7 (denying removal under § 205 where non-signatory was intentionally excluded from arbitration provision) (emphasis added). So too, a district court found no abuse of discretion where a court "refus[ed] to employ equitable estoppel" where the non-signatory "had the opportunity to negotiate for its own arbitration clause . . . but did not do so." *Hallwood Grp. Inc. v. Balestri*, Civil Action No. 3:10–CV–1198–K., 2010 WL 4274754, at *3 (N.D. Tex. Oct. 21, 2010) (finding that court did not abuse its discretion in "refusing to employ equitable estoppel" when the non-signatory "had the opportunity to negotiate for its own arbitration clause . . . but did not do so").

Here, as set forth above, the Chevron U.S. Defendants, as members of the Owner Group, could have sought to include in the Jetty Contract a provision requiring that any disputes against them be resolved in arbitration. They did not, and for good reason: the Chevron U.S. Defendants wanted as much insulation as possible between them, as U.S. entities, and the liabilities, regulations,

taxes, and exposure posed by this unique and massive construction project in Australia. The last thing the Chevron U.S. Defendants wanted was to arbitrate billion-dollar disputes on the other side of the globe. Hence, the Chevron U.S. Defendants, as members of the Owner Group, made sure that the Owner Group was *not* within the ambit of the arbitration agreement in Article 21.2, and further, in Article 10 of the Form of Agreement made sure that no one could interpret Article 21 as applying to the Owner Group. Under these circumstances, and under the authorities cited above, applying equitable estoppel here is tantamount to rewriting the Jetty Contract.

Nor is the result any different if the Court applies Western Australian law to determine whether the non-signatory Chevron U.S. Defendants can enforce the arbitration agreement in the Jetty Contract. Article 21.1 of the Jetty Contract provides that the Agreement "shall be governed . . . in accordance with the laws of Western Australia." Jetty Contract Art. 21.1. Thus, in the alternative, the Court can apply the law of Western Australia to determine whether the Chevron U.S. Defendants can invoke the doctrine of equitable estoppel to enforce the arbitration agreement in Article 21.2 of the Jetty Contract. *See Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, 601 F.3d 329, 336 (5th Cir. 2010) (confirming that state law governs whether non-signatory can invoke equitable estoppel to enforce arbitration provision and remanding in part for determination of impact of English choice-of-law provision); *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, Civ. No. 08-1195, 2011 WL 1226464, at *5 (E.D. La. Mar. 28, 2011) (on remand, upholding English choice-of-law provision and applying English law to determine whether non-signatory could invoke equitable estoppel to enforce arbitration provision). The result is the same, however, because Western Australian law does not recognize the doctrine of equitable estoppel to allow non-signatories to enforce arbitration agreements.[13]

_____

[13] California federal and state courts have permitted "*depecage*," or issue-by-issue choice-of-law analysis. *See, e.g.*, *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) ( "A separate choice-of-law inquiry must be made with respect to each issue in a case."); *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001) (noting that "a separate conflict of laws inquiry must be made with respect to each issue in the case"); *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 896 (Cal. Ct. App. 1998) (same); *Beech Aircraft Corp. v. Superior Court*, 61 Cal. App. 3d 501, 522-23 (Cal. Ct. App. 1976) (same). So this Court may apply Western Australian law to the specific issue of whether the Chevron U.S. Defendants can invoke the doctrine of equitable estoppel to enforce the arbitration agreement in Article 21.2 of the Jetty Contract as non-signatories to the agreement, and still apply California substantive law to Plaintiff's

18

In short, the Chevron U.S. Defendants have failed to prove that the arbitration agreement in Article 21.2 of the Jetty Contract provides a defense to Plaintiff's claims in this case. Thus, since only Plaintiff's state-law claims for tortious interference and breach of the Jetty Charter would remain, and there are no other grounds for federal jurisdiction,[14] this Court must remand this case to the Contra Costa County Superior Court under *Infuturia* and *Beiser*. *See Infuturia*, 631 F.3d at 1137-38; *Beiser*, 284 F.3d at 674-75; *Al Rushaid*, 2015 WL 1602125, at *8-10; *QPro Inc.*, 761 F. Supp. 2d at 504; *Celanese Corp.*, 2006 WL 3513633, at *8; *Certain Underwriters at Lloyd's London & Other Insurers Subscribing to Reinsurance Agreements*, 2004 WL 2203244 at *3.[15]

## C.    For the Same Reasons, There Is No Removal Jurisdiction Under 9 U.S.C. § 205

Whether the case was properly removed in the first instance under Section 205 is irrelevant, because in any event there is no subject-matter jurisdiction under § 203. We note, however, that even the initial removal was improper under § 205.

According to the Chevron U.S. Defendants, removal was proper under § 205 because "(1) Plaintiff is a party to an agreement that includes an arbitration provision that falls under the [New York Convention] (see 9 USC § 202) and (2) the subject matter of the litigation relates to the arbitration agreement (see 9 USC § 205)." Joint Notice of Removal (ECF 1) at 2:17-20. As

---

state-law claims for intentional interference with contract and breach of the Jetty Charter against the Chevron U.S. Defendants.

[14] The Chevron U.S. Defendants' only asserted basis for federal removal jurisdiction is 9 U.S.C. § 205. *See* Joint Notice of Removal (ECF 1), at 1, 2.

[15] According to the Chevron U.S. Defendants, there is a second basis for this Court to assert subject-matter jurisdiction: "the Court also has Diversity Jurisdiction under 28 U.S.C. § 1332(a)(2)." Joint Notice of Removal (ECF 1) at 9 n.3. But the Chevron U.S. Defendants have *not* alleged diversity jurisdiction as a basis for removal because all of the Chevron U.S. Defendants are citizens of California. *See Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) ("§ 1441(b) confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state"). For this reason, the Chevron U.S. Defendants only rely on diversity jurisdiction as a basis for subject-matter jurisdiction, *not* removal jurisdiction. *See* Joint Notice of Removal (ECF 1) at 9 n.3. But because the Chevron U.S. Defendants fail to meet their burden in establishing jurisdiction on their only stated ground for removal, and because there is no subject-matter jurisdiction under Section 203, this Court must remand this case to the Contra Costa County Superior Court.

discussed below, the Chevron U.S. Defendants have not met their burden with respect to either question.

### 1. The Chevron U.S. Defendants Fail To Satisfy the "Relates To" Requirement Under 9 U.S.C. § 205

Where a removing defendant invokes Section 205 as the basis for removal, it must establish that "the subject matter of the action . . . *relates to* an arbitration agreement . . . falling under the Convention." 9 U.S.C. § 205 (emphasis added). For two separate and independent reasons, the subject matter of this action does not "relate to" the arbitration agreement in Article 21.2 of the Jetty Contract.[16]

### 2. The Chevron U.S. Defendants Have Not Shown That They Will Participate in the Australian Arbitration or Any Other Arbitration with Plaintiff

Where a removing defendant refuses to participate in an arbitration that it seeks to compel, the subject matter of the case pending before the court does not "relate to" the arbitration agreement as that term is used in Section 205. *See Goel*, 823 F. Supp. 2d at 212. That is, a defendant cannot seek safe harbor in the Convention and at the same time refuse to arbitrate, effectively leaving the plaintiff with no forum to pursue claims against the defendant. The purpose of the Convention is to send arbitrable disputes to arbitration, not to immunize a defendant from liability by insulating it from litigation while the defendant also refuses to arbitrate.

---

[16] While the Chevron U.S. Defendants talk much about presumptions in favor of arbitration, they have it backwards. In contrast to when the removing party is a signatory to the arbitration provision—and it is undisputed that Defendants are not signatories (Joint Notice of Removal (ECF 1) ¶ 18, at 7:16-19)—the "liberal federal policy favoring arbitration agreements" is "inapposite" where the issue is "whether a particular *party* is bound by the arbitration agreement." *Comer*, 436 F.3d at 1098 (emphasis in original). Where the issue is whether an arbitration agreement applies to a non-signatory, the Ninth Circuit has made clear that "the presumption is that the agreement does ***not*** apply to it." *McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16*, 859 F.2d 1382, 1384 n.2 (9th Cir. 1988) (emphasis added); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (affirming denial of motion to compel arbitration where "[t]he face of the contract . . . indicates that this dispute 'is not within the scope of the arbitration provision.'") (citation omitted); *In re Tobacco Cases I*, 124 Cal. App. 4th 1095, 1111-12 (2004) ("[T]hose presumptions in favor of arbitration do not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision. 'There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate.'") (citations omitted). Therefore, the Chevron U.S. Defendants, as non-signatory removing parties, must overcome this presumption.

20

In *Goel*, a non-signatory removed the case brought against him in state court under Section 205. Although claiming that the case brought against him related to a then-pending arbitration, he refused to participate in that arbitration, and he refused to be bound by the arbitration's outcome. *See id.* at 212, 216. The district court held that "given that [he was] not a party to the arbitration, and has expressly refused to be bound by the arbitration's outcome, *he has not explained how the disposition of this case could be affected by that arbitration*." *Id.* at 216 (emphasis added).

Critically, the *Goel* court found that the "subject matter" of the case pending before the court did not "relate to" the arbitration agreement *precisely because the non-signatory party did not intend to participate in the ensuing arbitration*:

> In most cases addressing removal under § 205, the removing defendant seeks to compel the plaintiff to arbitrate with the defendant. There are certainly cases involving non-signatories to an applicable arbitration agreement, both where a signatory defendant seeks to compel a non-signatory plaintiff to arbitrate its claims, and where a non-signatory defendant seeks to compel a signatory plaintiff. However, ***the Court has found no case where a non-signatory defendant has removed a case under § 205 as related to an arbitration agreement to which the defendant is not a party, and also is not seeking to compel or participate in an arbitration***.

*Id.* at 212 (emphasis added).

Rather, the *Goel* court found support to the contrary from *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486 (2d Cir. 2010), the "only one other case in which a party who was not a signatory to an arbitration agreement sought to invoke the arbitration in a federal court litigation, yet refused to participate in the arbitration." *Id.* at 219. There, several officers of a company "espouse[d] arbitration *between* [the plaintiff] *and* [the company]," "expressly declined to participate in such arbitration," and moved to dismiss the complaint against them on that ground. *Baker & Taylor*, 602 F.3d at 491 (emphasis in original). The Second Circuit reversed the district court's dismissal order, stating that "[w]e know of no authority holding that two parties can be forced to arbitrate against their present wishes, even if they originally signed a contract agreeing to arbitrate, *when the only parties espousing arbitration are nonsignatory parties who refuse to participate therein*." *Id.* (emphasis added).

The Chevron U.S. Defendants cite no case, and Plaintiff is not aware of any, in which a defendant was able to remove a case under the Convention without—at the same time—seeking to actually compel arbitration. Indeed, that result would be absurd. If the Chevron U.S. Defendants here want to actually arbitrate Plaintiffs' dispute against them in Australia, they can ask for that relief and the parties can spar over whether the Chevron U.S. Defendants are entitled to that relief. But since the Chevron U.S. Defendants do not even seek to compel arbitration of Plaintiff's claims in this case against them, the issue of whether they could do so under some theory is purely academic. And because the Chevron U.S. Defendants have not sought to compel arbitration of Plaintiff's claims asserted *against them* in this case, the Convention is simply inapplicable; hence, there is no original jurisdiction in this Court. Thus, as in *Goel*, this Court should reject the Chevron U.S. Defendants' improper attempt to invoke removal jurisdiction under Section 205 under these facts.

### 3. Under California Law, No Award Rendered in the Australian Arbitration Could Have a Preclusive Effect on This Case

The Chevron U.S. Defendants also argue—without authority—that Plaintiff's claims "relate to" the arbitration agreement in the Jetty Contract under Section 205 because the Australian Arbitration will have some type of collateral estoppel effect on Plaintiff's claims asserted in this case: "[i]f an arbitration panel ultimately decides that Chevron JV and KJV have not breached the Jetty Contract, the Chevron U.S. Defendants will be entitled to use that finding as a defense to Plaintiff's claims of 'Intentional Interference with Contract.'" Joint Notice of Removal (ECF 1) at ¶ 21. The Chevron U.S. Defendants cite no case, however, suggesting that the "relates to" requirement under Section 205 can be met simply on the basis of self-serving speculation as to the preclusive effect of any arbitral award. To the contrary, and in sharp contrast, the law is clear that a party cannot meet Section 205 requirements if, as is the case here, that party only talks about arbitration but does not seek to actually compel arbitration of the claims asserted against it.

Further, the Chevron U.S. Defendants are also wrong about the preclusive effect of any arbitral award rendered in the Australian arbitration on Plaintiff's claims against them in this case. Under California law, "a private arbitration award, even if judicially confirmed, *may not have*

*nonmutual collateral estoppel effect under California law unless there was an agreement to that*
*effect in the particular case."* Jacobs v. CBS Broadcasting Inc*., 291 F.3d 1173, 1178 n.5 (9th Cir.*
*2002) (quoting* Vandenberg v. Superior Court*, 21 Cal. 4th 815, 824 (1999) (emphasis added)).[17]*

No such agreement exists here, and in fact, Article 10 of the Form of Agreement suggests just the
opposite. Given California law concerning the non-preclusive effect of arbitral awards, the
Australian Arbitration will not impact Plaintiff's claims against the Chevron U.S. Defendants in this
case. Moreover, Plaintiff will not, as the Chevron U.S. Defendants argue, "be precluded from
seeking any additional compensatory damages." Mot. at 8-9; *see* Dawe v. Corrections, USA*, 506*
*Fed. Appx. 657, 659 (9th Cir. 2013) (holding that awards for breach of contract and tortious*
interference do *not* constitute impermissible double recovery).

And contrary to the Chevron U.S. Defendants' facile assertion, a failure to demonstrate a
breach of the underlying contract is *not* fatal to a claim for intentional interference with contract
under California law. Rather a "disruption" of the underlying contract will suffice to state a valid
interference claim, even if the plaintiff does *not* demonstrate an actual breach:

> ***Plaintiff need not allege an actual or inevitable breach of contract***
> ***in order to state a claim for disruption of contractual relations.***
> We have recognized that interference with the plaintiff's
> performance may give rise to a claim for interference with
> contractual relations if plaintiff's performance is ***made more costly***
> ***or more burdensome***.

Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 592 (Cal. 1990) (emphasis added).*

Indeed, California courts have found that a party can assert a valid claim for intentional interference

with contract where, as here, a contracting party was expressly afforded discretion under the

contract, and exercised that discretion improperly based on instructions or directives from an

---

[17] *See also* Global Live Events v. Ja-Tail Enters*., LLC, No. CV 13–8293 SVW, 2014 WL 1830998,*
at *3 (C.D. Cal. May 8, 2014) (denying motion to stay case pending completion of arbitration
governed by FAA and recognizing that "it is difficult to assess in advance whether the result of one
proceeding will have any collateral estoppel effect in the other") (citing *Vandenberg*, 21 Cal. 4th at
831–33, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (considering "whether private arbitration awards should
have nonmutual collateral estoppel effect" and concluding that because "private arbitration is a
contractual proceeding whose scope and effect are defined and limited by the parties' consent," "*the
public policy reasons against applying the collateral estoppel doctrine well outweigh those in favor
of doing so*") (emphasis added).

interfering non-party to the contract.  *See, e.g., Campbell v. eBay, Inc.*, Case No. 13-CV-2632 YGR, 2014 WL 3950671, at *4 (N.D. Cal. Aug. 11, 2014).  Thus, in addition to not providing a basis for removal jurisdiction under Section 205, the Chevron U.S. Defendants' collateral estoppel analysis is based on an erroneous understanding of the elements of a claim for intentional interference with contract under California law.[18]

### D. The Chevron U.S. Defendants Also Fail to Satisfy the "Falls Under" Requirement

Likewise, the Chevron U.S. Defendants have not met—and cannot meet—their burden of showing that there is an arbitration agreement that "falls under" the Convention because, as demonstrated in detail above:  (i) they are expressly and intentionally excluded from the purview of the arbitration provision in the Jetty Contract; and (ii) there is no arbitration agreement in the Jetty Charter.  To show that the arbitration agreement falls under the Convention, the Chevron U.S. Defendants must show that "there is an agreement in writing within the meaning of the Convention." *Balen v. Holland Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009) (listing this as the first of four factors) (citation omitted).  As applied, this analysis is not conducted in a vacuum, and so simply showing that a plaintiff is a party to an agreement in writing with an arbitration clause is not enough.  Rather, "the burden is on a removing defendant to show that "there is an agreement in writing to arbitrate **the subject of *the dispute***." *Cape Flattery Ltd. v. Titan Marine*, 607 F. Supp. 2d 1179, 1183 (D. Haw. 2009), *aff'd*, 647 F.3d 914 (9th Cir. 2011)) (citation omitted) (emphasis added).[19]  The Chevron U.S. Defendants have not and cannot show that there is an agreement in writing to arbitrate the subject of the dispute before this Court because, as demonstrated above, (i) the Jetty Contract expressly excludes them from being able to enforce the arbitration clause, and (ii) there is no arbitration agreement in the Jetty Charter.  *See supra* § III(B).  Therefore, they have not met (and

---

[18] Here again, the Chevron U.S. Defendants ignore the fact that any arbitral award rendered in connection with the Jetty Contract will not have preclusive effect on Plaintiff's separate claim against them for breach of the Jetty Charter, which does *not* have an arbitration agreement.

[19] *See also SanDisk*, 84 F. Supp. 3d at 1031 (court must determine whether "the parties agreed to arbitrate *that* dispute"); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) ("Is there an agreement in writing to arbitrate *the subject of the dispute*?") (emphasis added).

cannot meet) their burden of showing that there is an agreement that falls under the Convention—a threshold prerequisite for removal under Section 205. *Cf. Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1162 (9th Cir. 2008) (Noonan, J., dissenting) (Section 202 "comes into play only if there is a valid agreement to arbitrate. We have already determined that no such agreement exists. The international arbitration statute has not been set in motion."); *Radware, Ltd. v. F5 Networks, Inc.*, Case No. C-13-02024-RMW, 2013 WL 6773799, at *2 (N.D. Cal. Dec. 23, 2013) (where an agreement "explicitly excludes" an issue from its purview, a dispute about that issue "is thus not subject to arbitration").

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court remand this case to the Contra Costa County Superior Court.

Dated: October 19, 2016                    WINSTON & STRAWN LLP


By    */s/ Robb Adkins*
           Robb Adkins  (SBN: 194576)
           radkins@winston.com
           Krista M. Enns (SBN: 206430)
           kenns@winston.com
           Seth Weisburst (SBN: 259323)
           sweisburst@winston.com
           Winston & Strawn LLP
           101 California Street
           San Francisco, CA  94111
           Telephone: (415) 591-1000
           Facsimile:  (415) 591-1400

           Harvey Kurzweil
           (*pro hac vice admission*)
           hkurzweil@winston.com
           Adam J. Kaiser
           (*pro hac vice admission*)
           akaiser@winston.com
           Martin C. Geagan
           (*pro hac vice admission*)
           mgeagan@winston.com
           Winston & Strawn LLP
           200 Park Avenue
           New York, NY  10166
           Telephone: (212) 294-6700
           Facsimile:  (212) 294-4700

25

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- CASE No.  4:16-cv-05344-CW

Paula W. Hinton
(*pro hac vice admission*)
phinton@winston.com
Luke A. Culpepper
(*pro hac vice admission to be filed*)
lculpepper@winston.com
Winston & Strawn LLP
1111 Louisiana Street, 25th Floor
Houston TX 77002-5242
Telephone: (713) 651-2600
Facsimile: (713) 651-2700

Ricardo E. Ugarte
(*pro hac vice admission*)
rugarte@winston.com
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

***Attorneys for Plaintiff CPB CONTRACTORS
PTY LIMITED***

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -- CASE NO. 4:16-CV-05344-CW

## <u>ATTESTATION PURSUANT TO GENERAL ORDER 45</u>

Pursuant to General Order No. 45, § X(B), regarding signatures, I attest under penalty of perjury that the concurrence in the filing of this document has been obtained from its signatories.

Dated: October 19, 2016

*/s/ Seth Weisburst*